# United States Court of Appeals

*for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

– v. –

ALEX KAI TICK CHIN,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON
IN NO. 3:22-CR-00087-1, HONORABLE ROBERT C. CHAMBERS, JUDGE

## BRIEF OF APPELLANT

DAVID O. SCHLES
LAW OFFICE OF DAVID SCHLES
815 Quarrier Street, Suite 306
Charleston, West Virginia 25301
(304) 344-1559

*Attorneys for Defendant-Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (814046)

# TABLE OF CONTENTS

**Page**

Table of Contents .................................................................................i

Table of Authorities............................................................................ ii

Statement of Subject Matter and Appellate Jurisdiction............................................1

Statement of Issues Presented for Review ................................................2

Statement of the Case............................................................................3

    Procedural History .........................................................................3
    Statement of Facts...........................................................................7

Summary of Argument.........................................................................14

Argument..............................................................................................15

    Standard of Review.........................................................................15

    Discussion of Issues........................................................................15

        1. Speedy Trial Act Violation ......................................................15
        2. Multiplicity of Counts One and Two .......................................23
        3. Denial of Motion To Suppress .................................................26
        4. Motion to Exclude 404 (b) Evidence .......................................36
        5. Improper Impeachment of Defendant........................................40
        6. Unreasonable Sentence .............................................................46

Conclusion and Relief Sought ..............................................................53

Request for Oral Argument....................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

18 U.S.C. § 2242 (b) ...............................................................................48

18 U.S.C. § 2246 (2) ..............................................................................49

18 U.S.C. § 2247 ...............................................................................4, 48

18 U.S.C. § 2251 ...................................................................................25

18 U.S.C. § 2251 (a) ..........................................................1, 3, 16, 25, 47

18 U.S.C. § 2251 (e) ...............................................................1, 3, 16, 47

18 U.S.C. § 2260A ..................................................................1, 3, 17, 48

18 U.S.C. § 2422 (b) ...............................................................1, 4, 24, 25

18 U.S.C. § 2427 ......................................................................................1

18 U.S.C. § 3161 (c)(1) ................................................................18, 19, 22

18 U.S.C. § 3161 (h) ...............................................................................20

18 U.S.C. § 3161 (h)(1)(F) ..................................................................20, 21

18 U.S.C. § 3553 (a) .....................................................................15, 46, 47

18 U.S.C. § 3553 (a)(2) ...........................................................................53

18 U.S.C. § 3742 (2025) ............................................................................1

28 U.S.C. § 1291 (2023) ............................................................................1


**GUIDELINES**

U.S.S.G. § 2G1.3 (b)(4)(A) (2024) .............................................................48

U.S.S.G. § 2G2.1 (b)(2)(A) (2024) .............................................................48

U.S.S.G. § 3C1.1 (2024) ...........................................................................50

U.S.S.G. § 3C1.1, application note 2 (2024) .................................................50

U.S.S.G. § 4B1.5 (a) (2024) ......................................................................51

U.S.S.G. § 4B1.5 (b) (2024) ......................................................................51

U.S.S.G. § 4B1.5, Application note 4 (B)(1) (2024) .................................................51

## FEDERAL RULES OF EVIDENCE

Rule 403 .............................................................................................................5, 37

Rule 404 (b) ..............................................................................................2, 14, 38, 39

Rule 404 (b)(1) .........................................................................................................38

Rule 404 (b)(2) .........................................................................................................38

Rule 414 ...................................................................................................................4, 5

## CASES

*Bell v. United Princeton Properties*, 884 F.2d 713 (3d Cir. 1989) ..........................44

*Berkemer v. McCarty*, 468 U.S. 420 (1984) ...........................................................34

*Blockburger v. United States*, 284 U.S. 299 (1932)...........................................23, 24

*Clements v. Diamond State Port Corporation*,
2004 WL 2223303 (D. Del. Sept. 30, 2004) ............................................................44

*Gall v. United States*, 552 U.S. 38 (2007)....................................................46, 47, 52

*Hub Floral Corp. v. Royal Brass Corp.,* 454 F.2d 1226 (2d Cir. 1972) .................45

*In re Spring Ford Industries, Inc.*, 2005 WL 984180
(Bankr. E.D. Pa. Apr. 19, 2005) ...............................................................................44

*Jersey Cent. Power Light Co. v. Township of Lacey*,
772 F.2d 1103 (3d Cir. 1985) ...................................................................................44

*MacDonald v. General Motors Corp.*, 110 F.3d 337 (6th Cir. 1997) .....................45

*New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20 (4th Cir. 1963),
cert. denied, 376 U.S. 963 (1964) ............................................................................42

*Riley v. California*, 573 U.S. 373 (2014) ............................................................32, 33

*Rutledge v. United States*, 517 U.S. 292 (1966) ................................................23, 24

*Versarge v. Township of Clinton N.J.*, 984 F.2d 1359 (3d Cir. 1993) .....................44

*United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019)...............................32, 33

*United States v. Banker*, 876 F.3d 530 (4th Cir. 2017) ...............................................24

*United States v. Belculfine*, 527 F.2d 941(1st Cir. 1975) ....................................44, 45

*United States v. Black*, 707 F.3d 531(4th Cir. 2013)...................................................34

*United States v. Blood*, 806 F.2d 1218 (4th Cir. 1986) ...............................................42

*United States v. Brizuela*, 962 F.3d 784 (4th Cir. 2020) .............................................38

*United States v. Burns*, 109 F.Appx. 52 (6th Cir. 2004) .............................................45

*United States v. Burns*, 990 F.2d 1426 (4th Cir. 1993) ...............................................23

*United States v. Bush*, 944 F.3d 189 (4th Cir. 2019)...................................................37

*United States v. Carrasquillo*, 667 F.2d 382 (3d Cir. 1981) ......................................18

*United States v. Carter*, 564 F.3d 325 (4th Cir. 2009) ...............................................47

*United States v. Davis*, 690 F.3d 226 (4th Cir. 2012)..................................................26

*United States v. Engle*, 676 F.3d 405 (4th Cir. 2012)..................................................24

*United States v. Flores-Montano*, 541 U.S. 149 (2004)...............................................33

*United States v. Foster*, 634 F.3d 243 (4th Cir. 2011).................................................34

*United States v. Freitekh*, 114 F.4th 292 (4th Cir. 2024) ...........................................36

*United States v. Fruehauf*, 365 U.S. 146 (1961)..........................................................46

*United States v. Fugit*, 703 F.3d 248 (4th Cir. 2012) ..................................................24

*United States v. Gomez-Jimenez*, 750 F.3d 370 (4th Cir. 2014) ................................47

*United States v. Goodine*, 400 F.3d 202 (4th Cir. 2005) .............................................23

*United States v. Hall*, 858 F.3d 254 (4th Cir. 2017)....................................................38

*United States v. Hoover*, 95 F.4th 763 (4th Cir. 2024).................................................5

*United States v. Horton*, 693 F.3d 463 (4th Cir. 2012) ...............................................47

*United States v. Jarrell*, 147 F.3d 315 (4th Cir. 1998) ...............................................15

*United States v. Kaye*, 243 Fed. App'x 763 (4th Cir. 2007) ...............................24-25

*United States v. Kolsuz*, 890 F.3d 133 (4th Cir. 2018) ...............................................32

*United States v. Lawing*, 703 F.3d F.3d 229 (4th Cir. 2012).....................................23

*United States v. Leggette*, 57 F. 4th 406 (4th Cir. 2023)............................................34

*United States v. Lohse*, 797 F.3d 515 (8th Cir. 2015) .................................................24

*United States v. McDonald*, 850 F.3d 640 (4th Cir. 2017)..................................46, 47

*United States v. Mowatt*, 513 F.3d 395 (4th Cir. 2008)..............................................36

*United States v. Price*, 980 F.3d 1211 (9th Cir. 2020) ...............................................34

*United States v. Queen*, 132 F.3d 991(4th Cir. 1997) ................................................40

*United States v. Rodriguez-Amaya*, 521 F.3d 437(4th Cir. 2008)...........................15

*United States v. Seward*, 135 F.4th 161 (4th Cir. 2025)............................................40

*United States v. Shrader*, 75 F.3d 300 (4th Cir. 2012) .............................................23

*United States v. Skinner*, 70 F.4th 219 (4th Cir. 2023)..............................................49

*United States v. Sprinkle*, 106 F.3d 613 (4th Cir. 1997) ..........................................34

*United States v. Terry*, 909 F.3d 716 (4th Cir. 2018) ...............................................36

*United States v. Ventura*, 85 F.3d 708 (1st Cir. 1996)..............................................34

*Utah v. Strieff*, 579 U.S. 232 (2016) .........................................................................36

*Zedner v. United States*, 547 U.S. 489 (2006) ..........................................................18

## BRIEF ON BEHALF OF THE APPELLANT

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

(A) Subject matter jurisdiction exists because this appeal involves criminal offenses against the United States of America, specifically: Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251(e); Attempted Enticement of a Minor, in violation of 18 U.S.C. §§ 2422 (b) and 2427; and Committing a Felony Against a Minor While Being Required to Register as a Sex Offender, in violation of 18 U.S.C. § 2260A.

(B) Appellate jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

( C ) The appellant filed a timely Notice of Appeal. Judgment was entered by the district court on April 29, 2025. JA1014.[1] Mr. Chin filed his Notice of Appeal on May 8, 2025. JA1023.

(D) This appeal is from the final order entering judgment and sentencing Alex Kai Tick Chin JA1014-1022.

---

[1]References to the Joint Appendix filed in this appeal will be "JA__".

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred by denying Chin's motion to dismiss for violation of the Speedy Trial Act.

2. Whether the district court erred by denying Chin's motion to dismiss Count One of the second superseding indictment on multiplicity grounds.

3. Whether the district court erred by denying Chin's motion to suppress evidence from the warrantless search of Mr. Chin's cellphones including all data and metadata on the devices, and all the evidence derived from the illegal searches as fruits of the poisonous tree.

4. Whether the district court erred by denying Chin's motion to exclude Rule 404 (b) evidence.

5. Whether the district court erred by denying Chin's objection to impeachment with a prior inconsistent statement where the statement in question was the statement of Chin's counsel in a motion to suppress, not intended as an assertion of truth, and not a statement by Chin nor adopted by him.

6. Whether the sentence was procedurally or substantively unreasonable.

## STATEMENT OF THE CASE

## <u>Procedural History</u>

Mr. Chin was initially indicted by a grand jury for Southern District of West Virginia on April 26, 2022, and arrested on June 13, 2022, in the Northern District of California. JA18. The single count indictment charged Mr. Chin with enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, in violation of 18 U.S.C. § 2251(a) and (e). Mr. Chin made his initial appearance before a magistrate judge in the Northern District of California on June 15, 2022. JA18. Mr. Chin remained detained in the Northern District of California when on August 9, 2022, a superseding indictment was returned in the Southern District of West Virginia, which added a second felony count, charging Chin, a registered sex offender, with committing a felony production of child pornography offense involving a minor in violation of 18 U.S.C. § 2260A. JA20.

On November 3, 2022, with Mr. Chin still not having been transported to the Southern District of West Virginia, his counsel filed a motion to dismiss with prejudice for violation of the Speedy Trial Act. JA18. The motion asserted the Act had been violated because trial in this case had not taken place within 70 days from the August 9, 2022, filing of the Superseding Indictment, and Chin's substantive and procedural rights under the Speedy Trial Act had been violated.

On November 9, 2022, Mr. Chin was finally arraigned in the Southern District of West Virginia, nearly 5 months after his arrest and 92 days after the superseding indictment was returned; the arraignment order scheduled the trial for January 18, 2023. JA5 (docket entries 22 and 23). On December 21, 2022, the district court denied Mr. Chin's motion to dismiss, finding the Speedy Trial Act had not been violated because, it ruled, the speedy trial clock did not begin to run until Mr. Chin's arraignment on November 9, 2022. JA44.

On February 7, 2023, a second superseding indictment was returned. JA53. This is the operative charging instrument and in addition to the two offenses alleged in the superseding indictment added a new Count Two which charged Mr Chin with using a facility of interstate commerce, to entice a minor to engage in prohibited sexual activity, in violation of 18 U.S.C. §§ 2242 (b) and 2247. JA54.

On March 6, 2023, Mr Chin filed: a motion to suppress evidence; JA81; a motion to exclude other bad acts evidence (Rule 403); JA107; a motion to exclude evidence of a prior conviction; JA117; and a motion to dismiss Count Two of the second superseding indictment on multiplicity grounds. JA123. The hearing on these pretrial motions was held on March 20, 2023. JA176-228. On March 24, 2023, the district court entered a written order which denied Mr Chin's motions except the motion to exclude evidence of his prior conviction pursuant to F.R.E. 414, which was granted. Because the district court determined Rule 414 only

permitted introduction of such propensity evidence where the alleged victim was under age 14 and the victim in this matter was not. JA229-243.

On October 3, 2023, the government filed a notice of appeal and initiated an interlocutory appeal to this court arguing the district court erred by excluding evidence of Mr. Chin's prior conviction under Rule 414. JA318. Subsequently, on May 30, 2024, this court vacated the district court's ruling and remanded the case to the district court for further consideration in light of the decision in *United States v. Hoover*, 95 F.4th 763, 772 (4th Cir. 2024). *See*: 23-4261, docket entry 33. In *Hoover*, this court held that Rule 414 did not require the victim of an offense prohibited under Chapter 110 to be under the age of 14 for such conduct to be "child molestation." Upon remand the district court directed the parties to submit further briefing on the issue of whether the Rule 403 balancing test favored admission or exclusion of Mr. Chin's prior conviction at trial. Following the parties' filings, the district court entered an order on July 30, 2024, in which it applied the Rule 403 balancing test and held the relevant factors permitted introduction of Mr. Chin's prior conviction. JA342-345.

A three day jury trial was held from August 20 to August 22, 2024. JA346-969. The jury found Mr. Chin guilty of each of the three counts in the second superseding indictment.

Following the verdict, Mr. Chin filed a motion for new trial citing newly discovered evidence. The motion described the evidence as testimony from

witnesses who would testify as to the lack of credibility of Daniel Beckham a "jailhouse snitch" who testified for the government, and testimony from these witnesses who would also attest to Mr. Chin's character. Chin moved the district to grant a new trial at which these witnesses would testify. JA970. The district court denied the motion.

The probation office prepared a presentence investigation report (hereinafter "PSR") prior to sentencing. JA1025-1063. In the PSR Mr. Chin's total offense level was calculated as 43 and his criminal history in category II, resulting in an advisory range of Life. JA1038. Mr. Chin filed numerous objections to the PSR. JA1057-1062. The defendant asserted, based on his objections, that the correct total offense level was 34, resulting in an advisory sentencing range of 151-188 months. JA1062.[2] (Count One carries a statutory mandatory minimum of 25 years and Count Three carried a mandatory 10 year sentence to be served consecutively).

Mr. Chin was sentenced on April 28, 2025. JA977-1013. The court sentenced Mr. Chin to 27 years on Count One, 27 years on Count Two to run concurrently to Count One, and 120 months on Count Three to be served consecutively to Counts One and Two, for a total imprisonment term of 444 months. JA1015. Mr. Chin now appeals his convictions and sentence.

---

[2]The correct sentencing range for offense level 34 and criminal history category II is 168-210 months.

**STATEMENT OF FACTS**

The investigation in this matter began on March 21, 2022, when Mr. Chin, a United States citizen, reentered the country at the Paso Del Norte (PDN) Port of Entry. A Primary Customs and Border Protection Officer (CBPO) asked Chin why he visited Mexico was and Chin stated he visited Juarez briefly just to walk around and that he visited a bar. JA1029. The CBPO then conducted a law enforcement query and received notice Chin was a registered sex offender. Mr. Chin was then detained and a CBPO escorted Chin to Passport Control Secondary (PCS). JA1029.

Chin was traveling with two smartphones, a Samsung Galaxy 9, and an Armor 7E. Despite no reasonable suspicion of wrongdoing, Supervisor CBPO (SCBPO) Wally Terrazas approved a manual electronic media search of the devices. JA1029. Upon demand, Chin unlocked the cell phone devices and provided the passwords. The CBPO placed the Samsung Galaxy 9 on "airplane mode" and conducted a manual search of the smartphone. JA1029. The CBPO asked Chin who was the female depicted on the defendant's Samsung Galaxy 9 locked screen wallpaper. Chin reportedly advised she was a friend with whom he had no family relationship and that he met her online and had communicated with her for over 18 months. JA1030.

Border Patrol officers then summoned Homeland Security Investigation (HSI) Special Agents to continue the investigation. HSI Agents conducted a further

7

manual search of the Samsung Galaxy 9 which resulted in the discovery of 15 images saved in the gallery. JA1030. The images appeared to be screen shots taken from Snapchat communications. The images appeared to depict the same female. The female was described by HSI agents as appearing approximately 12-14 years of age. Subsequent investigation determined the images showing a face were of A.M. (hereinafter "Minor Victim 2" or "MV2"). JA1030. The images were saved to the gallery on December 12, 2020, January 8, 2021, January 9, 2021, and January 11, 2021. Multiple images depicted a female with exposed breasts. Three photos contained a white female's genitalia. The face of the female could not be seen. JA1030.

Agents located a Snapchat account on the Samsung phone in the name of Alexander Hamilton with the username karmadinosaur. This Snapchat account contained recent communication with a Snapchat profile, later identified as belonging to A.C. (hereinafter referred to as "Minor Victim 1" or "MV1"). JA1030. The female depicted on the Snapchat profile matched images saved in the Samsung's gallery and the Samsung lock screen wallpaper. Agents then gave Mr. Chin the Miranda warning. Chin invoked his right to speak with an attorney and the interview was terminated. Chin was subsequently released from custody but his two smartphones were seized following the manual search. JA1030.

The following day, March 22, 2022, a HSI agent conducted a Facebook

search, and located images on a Facebook account that matched the images of the young female saved to Chin's Samsung's gallery and the lock screen wallpaper. The Facebook account indicated that MV1 was associated with Spring Valley High School in West Virginia as its friend list contained students from Spring Valley. JA1030. Further investigation confirmed the location and date of birth for MV1 and that the images on Chin's Samsung were saved when the MV1 was 17 years of age. JA1030.

HSI agents subsequently contacted MV1 as the investigation continued. At trial, MV1 testified that she began communicating with Chin via Snapchat in late 2020, She testified that she initially met Chin through her friend, MV2, who was previously communicating with Chin on Snapchat. JA381-382. MV1 testified that she told the defendant she was 17 years old and attended high school (MV1 turned 18 on December 9, 2021). JA383. She said the conversation was friendly and that Chin helped her with her homework. JA384.

MV1 testified that Chin said he wanted a relationship with her. JA385. MV1 testified that when she told Chin she was dating other people, he would get upset and threaten to kill himself. JA386. MV1 testified she would do what he asked so he would stop the threats. JA386. Chin initially asked for "normal" pictures of MV1, and she would send pictures to him via Snapchat. JA386. Chin responded to the pictures with heart emojis, and told MV1 she was "cute." JA387.

MV1 testified Chin eventually began requesting nude photographs of her. JA394. MV1 testified this made her uncomfortable but Chin would get upset and threaten to harm himself so she sent topless photographs and eventually nude photographs of her pubic area. JA394-395, JA401-402. During the Snapchat conversations, Chin talked about traveling to West Virginia to see MV1. JA406. The defendant told her that he would travel in a camper van that had a bed. JA407. MV1 testified she told the defendant she did not want him to travel to West Virginia to see her. JA407. MV1 testified, however, that Chin told her he had been to West Virginia and that she had seen a person who resembled Chin at a Sam's Club in West Virginia in March 2022. JA411.

Minor Victim 2, a friend of MV1 and the person who initially introduced MV1 to Chin via Snapchat, also testified at trial. She testified that she communicated with Chin via Snapchat beginning in 2020, and his username was "Alexander Hamilton." JA450, JA453. MV2 said Chin was "friendly" and complimentary and that initially they made small talk about school and their activities. JA454. Eventually, MV2 testified, the conversations turned sexual and Chin would direct her to touch her vagina and asked her to send him nude photographs of her vagina and breasts. JA457-458. MV2 testified she sent nude photographs to Chin when she was eleven years old. MV2 also testified that Chin threatened to hurt himself if she did not send nude photographs, so she felt like she

had to send the nude photographs to him. JA459. She testified Chin sent pictures of him holding a knife near his arm pretending he was going to cut himself. JA460. In March 2022, Chin traveled to West Virginia, and MV2 testified she saw him drive by her home. JA464. After she saw Chin near her home, she blocked him on Snapchat. JA467.

Leland Pickering a Computer Forensic Analyst for the Department of Homeland Security testified at trial concerning the forensic examination of the two smartphones seized from Mr. Chin. JA522-704. Pickering testified he recovered some sexually explicit Snapchat conversations between the defendant and MV1 that occurred occurred between 2020 and 2022. JA550-567. In these Snapchat messages, Chin described his desire to engage in anal sex. JA550-551.

Agent Pickering testified that numerous pictures of MV1 and MV2 were found on Chin's phone. JA568. Pickering further testified that he found nude pictures of MV1 on Chin's phone. JA578. Chin had a picture of MV1 as the lockscreen on his phone. JA583. Also located on the defendant's phone was a screenshot of the price of a Greyhound bus ticket to West Virginia. JA589. The defendant also had screenshots of MV1 and MV2's locations in West Virginia. JA584-588. Pickering testified Chin sent pictures of the van that he drove to West Virginia to MV1 and MV2. JA593-594. There were several discussions regarding MV1's breasts. Pickering identified several images of MV1's breasts, vagina, and

11

anal area that were recovered from Chin's phone. JA622-634 Agent Pickering said in total including "normal images" approximately 300 images of MV1 were recovered from the defendant's phone. JA635.

Mr. Chin also testified at trial. The defendant testified at trial that he first met MV2 and MV1 in 2020 using an adult chatroom online. JA772. Chin testified the conversation then switched to Snapchat. JA772. He testified he befriended MV1 and MV2 because he was grieving the death of his fiancée and was lonely and needed to talk to someone. JA773. He testified they initiated the sexual talk and that he engaged in it because: "They said if I didn't do anything with them, they'd stop talking to me." JA774. Mr. Chin further testified that he never asked for the nude pictures of MV1 found on his smartphone, that he never threatened to harm himself to persuade her to send any pictures or otherwise persuade or entice her to send them. JA776, JA786. Chin asserted it was MV1's idea to send the pictures because she was obsessed with sending pictures because "she wanted everyone to like her." JA776. He testified he asked her multiple times to stop sending him pictures but she continued to do so despite his objection. JA776.

He testified he passed through West Virginia in 2022 because he was on his way from California to New Jersey and decided to thank MV2 for helping him deal with his grief over the death of his fiancée. JA780. He did not meet either MV1 or MV2 while in West Virginia. JA780.

When specifically questioned about images of MV1 found on his phone, Chin acknowledged that he "probably" received them from MV1 through Snapchat but reiterated that he did not request that MV1 send him nude images and that she did so by her choice only. JA786. He stated he did not threaten to harm himself or otherwise in any way persuade, encourage or entice her to send him images but that she sent them "randomly all the time." JA786.

Chin testified that MV1 was the one who wanted to have sexually explicit conversations and that she instructed him as to what to say to her in his messages. JA787. He complied with her requests only so she would continue to converse with him on Snapchat as he needed a friend. He denied asking MV1 to do anything of a sexual nature and testified that he believed MV1 was 18 or 19 years old during the period they conversed on Snapchat. Mr. Chin was asked directly, "Now, at any point in time, at any point in time, did you threaten, or coerce, or do anything to entice [MV1] to send you any naked pictures of herself?" He responded, "No. I would never tell her to do anything. She's – she's the kind of person that does what she wants and gets what she wants. That's -- that's how her personality is like." JA788.

# SUMMARY OF ARGUMENT

The district court erred by denying Chin's motion to dismiss for violation of the Speedy Trial Act because more than 70 non-excludable days elapsed between the date Mr. Chin's counsel appeared on his behalf in the United States District Court For the Southern District of West Virginia and the date on which the trial was initially scheduled to commence. The district court erred by denying Chin's motion to dismiss Count One of the second superseding indictment on multiplicity grounds because the offenses charged in Count One and Count Two require proof of the same elements.

The district court erred by denying Chin's motion to suppress evidence from the warrantless search of Mr. Chin's cellphones including all data and metadata on the devices, and any evidence derived from the illegal searches as fruits of the poisonous tree because the district court wrongly found the border search exception permitted a warrantless search of Chin's phone.

The district court erred by denying Chin's motion to exclude Rule 404 (b) evidence because the admitted evidence was extrinsic to the offenses charged and the probative value was substantially outweighed by unfair prejudice and confusion of the issues.

The district court erred by denying Chin's objection to his impeachment with a prior inconsistent statement where the statement in question was the

statement of Chin's counsel taken out of context, not a statement by Chin, and should not have been deemed a binding judicial admission.

The sentence was procedurally unreasonable because the district court erroneously calculated the advisory guidelines sentencing range and substantively unreasonable because the effective sentence of 37 years (444 months) is greater than necessary to effectuate the purposes of sentencing set forth in 18 U.S.C. § 3553 (a).

**ARGUMENT**

**STANDARD OF REVIEW**

The standards of review will be set forth under each issue presented.

**DISCUSSION OF ISSUES**

**1. The district court erred by denying Chin's motion to dismiss for violation of the Speedy Trial Act.**

This court reviews *de novo* a district court's interpretation of Speedy Trial Act provisions and whether the court properly excluded a given period of time, as that presents a question of law. *United States v. Rodriguez-Amaya*, 521 F.3d 437, 440 (4th Cir. 2008); *United States v. Jarrell*, 147 F.3d 315, 317 (4th Cir. 1998). A district court's factual findings are reviewed for clear error. *Rodriguez-Amaya*, 521 F.3d at 440. This appeal involves uncontested facts and presents a question of law to be reviewed *de novo*. Mr. Chin is not asserting a Sixth Amendment Speedy trial

15

violation in this appeal.

On April 26, 2022, the Government filed an Indictment charging Chin with persuading, inducing, and enticing "Minor Victim 1" to engage in sexually explicit conduct for purposes of producing visual depictions, in violation of 18 U.S.C. §§ 2251(a) and (e). JA4, Docket entry 1. On June 13, 2022, the defendant was arrested in San Francisco pursuant to the warrant issued for the Indictment. JA4, Docket entry 6. On June 15, 2022, the defendant had his initial appearance in the Northern District of California. JA18. The defendant has remained continuously in custody since June 13, 2022 as the government filed a motion which was granted for a stay of the release order entered in the Northern District of California pending a ruling by Southern District of West Virginia on the government's motion to revoke the release order. JA4, Docket entry 9. Appointed counsel for Mr. Chin filed a notice of appearance in the Southern District of West Virginia on June 22, 2022. JA4, Docket entry 11. On July 14, 2022, the Southern District of West Virginia granted the Government's Motion to Revoke Release Order. JA5, Docket entry 17. This Order included a directive that the defendant "be detained and transferred to West Virginia pending trial." JA5, Docket entry 17, p.5. Despite this order, the defendant remained in federal custody in the San Francisco, California area for months. On August 9, 2022, a federal grand jury in the Southern District of West Virginia returned a superseding indictment which charged the defendant with two felony

16

counts. JA5, docket entry 19. The first count was identical to the production of child pornography charge previously set forth in the April 26, 2022, indictment. The second count charged the defendant, as a registered sex offender, committed felony production of child pornography, in violation of 18 U.S.C. § 2260A.

Due to the government's failure to transport Mr. Chin to the Southern District of West Virginia to stand trial, Chin's appointed counsel in California requested a status conference before a magistrate judge to determine why the defendant had not yet been transported to West Virginia. JA5, Docket entry 21, p. 32. On August 31, 2022, that status conference was held, and the Magistrate Judge entered a second commitment order directing that the defendant be transported to the Southern District of West Virginia. JA5, Docket entry 21, p. 33.

The government, however, continued to fail to transport Mr. Chin to the Southern District of West Virginia until November 9, 2022— 156 days after Mr. Chin was arrested. Then, at Mr. Chin's arraignment, his trial was not scheduled until January 18, 2023. As a result, Mr. Chin's procedural rights under the Speedy Trial Act were violated and the district court erred by denying Mr. Chin's motion to dismiss the Superseding Indictment, with prejudice. The government should not be permitted to evade the requirements of the Speedy Trial Act by wilfully refusing to timely transport a defendant in its custody to the charging district despite court orders to do so.

Congress enacted the Speedy Trial Act to protect both "a defendant's right to a speedy trial" and "the public interest." *Zedner v. United States*, 547 U.S. 489, 501 (2006). The Speedy Trial Act requires, in relevant part, that a defendant's trial "commence within seventy days … from the filing date of the information or indictment, or from the date when the defendant has appeared before a judicial officer of the court in which such charge is pending, whatever date last occurs." 18 U.S.C. § 3161(c)(1).

The Third Circuit has held that a pre-indictment initial appearance by a defendant can constitute an appearance before a judicial officer for purposes of 18 U.S.C. § 3161(c)(1). *United States v. Carrasquillo*, 667 F.2d 382, 384 (3d Cir. 1981). When such an appearance occurs, the subsequent filing of an indictment against the defendant will trigger the 70 day period in which trial has to commence. Id. In *Carrasquillo,* the defendant had previously appeared for an initial appearance after she was arrested on a criminal complaint. Id. at 383. The record showed that thirteen days later, the grand jury returned an indictment against the defendant. Id. The Third Circuit held that the dismissal of the case was mandatory where the Speedy Trial Act had been violated as the defendant's trial had not commenced within 70 days from the date of the return of the indictment. Id. at 390.

Although in this matter Mr. Chin had not physically appeared in the flesh the

Southern District of West Virginia at the time he filed his motion to dismiss, the government's filing of a Motion which contested the defendant's pretrial release necessarily created a situation where his appointed counsel had to make an appearance on the defendant's behalf before the district court for the Southern District of West Virginia. The district court's order of July 5, 2022, specifically directed the defendant to file a response to the Government's pending Motion to Revoke Release Order. JA5, Docket entry 13. This response should constitute Mr. Chin's earliest appearance in the Southern District of West Virginia.

Therefore, Chin's response to the government's motion of July 11, 2022, JA5, Docket entry 14, should be treated as the defendant making an appearance within the district for purposes of 18 U.S.C. § 3161(c)(1) because the substantive ruling by the district court on the Government's motion was entered only after formal consideration was given to Chin's submission of his response in the Southern District of West Virginia. Moreover, at the same time as the filing of the response, Chin, through counsel, also filed a motion specifically requesting the court to allow him to appear by video conference call for any hearing scheduled on the government's motion, which the district court subsequently denied as being moot. JA5, Docket entries 15 and 18. Chin's appearance by counsel, caused by the government, occurred prior to the Government's filing of the Superseding Indictment. Therefore for Speedy Trial purposes, August 9, 2022, the filing date for

the Superseding Indictment began the 70 day clock.

The Speedy Trial Act does provide for a variety of exclusions of time from the 70 day time period as set forth in 18 U.S.C. § 3161(h). One exclusion allows for a delay of ten days in the transporting of a defendant from another district. 18 U.S.C. § 3161(h)(1)(F). Any delay greater than ten days from either an order of removal or an order directing such transportation "shall be presumed to be unreasonable." Id. The Southern District of West Virginia's July 14, 2022, order specifically directed the defendant to be "detained and transferred to West Virginia pending trial." JA5, docket entry 17 at 5. This Order was provided to the U.S. Marshal's Service at that time. Despite that express order for the government to bring Mr. Chin to the Southern District of West Virginia for trial, the government delayed transporting Mr. Chin to the district until November 9, 2022. That was 92 days after the superseding indictment of August 9, 2022, 111 days after the transport order, and 156 days after his arrest.

This clearly constitutes an unreasonable delay and a delay which was meant to be addressed by the Speedy Trial Act. The defendant was not, as the Act requires, transported to West Virginia for his trial to commence by October 28, 2022. That date would have been the last date that the defendant's trial could have commenced within 70 day window of the filing of the Superseding Indictment along with an additional 10 day exclusion under 18 U.S.C. § 3161(h)(1)(F) for

transportation from another district. Therefore, the district court erred by denying Mr. Chin's motion to dismiss with prejudice.

The court below denied the motion based upon its premise that pursuant to the Speedy Trial Act, the 70 day window for his trial to commence was not triggered until his arraignment in the Southern District of West Virginia on November 9, 2022, and not on August 9, 2022 (the date of the superseding indictment) or any other earlier date as asserted by Mr. Chin.

The district court failed to consider that in this case, delay in transporting Mr. Chin to West Virginia was directly and entirely the result of the government's actions and inaction. A defendant in custody has no control over when he is transported for trial and is entirely at the mercy of the government if all pre-arraignment delay is excluded regardless of the circumstances and the cause for the delay. In practical effect, the district court's ruling would allow the government to detain a defendant without trial and delay a defendant's right to a speedy trial indefinitely merely by refusing to obey a court order and promptly transfer an incarcerated defendant for trial as envisioned by the Speedy Trial Act.

The Act provides that any delay greater than ten days from either an order of removal or an order directing such transportation "shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F). Here, at no time did the government proffer any reason for the months long delay in transporting Mr. Chin from

California where he was arrested on June 2, 2022, until November 9, 2022. Even following the superseding indictment of August 9, 2022, by which time Mr. Chin has already been in custody for over two months, the government which had exclusive power to bring Mr. Chin to court failed to do so for three additional months and proffered no reason why the delay was reasonable.

The Speedy Trial Act does not expressly define the term of art "appeared before a judicial officer of the court in which such charge is pending" as used in 18 U.S.C. § 3161 (c)(1) to establish a triggering date to commence the 70 day window. The district court erroneously found the Act requires a physical, in-person appearance in the district as a necessity but it offered no rationale for this holding and ignored the manifest unfairness of permitting the government to unreasonably delay a trial by the simple expedient of failing to act on a court's order to bring the defendant to the district. Mr. Chin requests this court conduct *de novo* review of the lower court's conclusion and hold that in the circumstances presented here, the appearance by counsel and filing of a court ordered response in the district in which the trial is to be held constitutes an appearance for purposes of the Speedy Trial Act. Furthermore, based upon that ruling, this court should hold the speedy trial clock began running no later than August 9, 2022, expired by October 28, 2022 (including the 10 day exclusion), at the latest and that as Mr. Chin was not afforded a trial by that date, his motion to dismiss with prejudice should have been granted.

**2. The district court erred by denying Chin's motion to dismiss Count One of the second superseding indictment on multiplicity grounds.**

To determine if an indictment is multiplicitous, a court must apply the test established in *Blockburger v. United States*, 284 U.S. 299 (1932). Under this test an indictment is multiplicitous if one offense is completely subsumed by another and they are charged separately. An indictment is not multiplicitous if "each count requires proof of an additional fact which the other does not". Id. At 304; *Rutledge v. United States*, 517 U.S. 292, 297 (1966).

This court reviews a district court's ruling on a motion to dismiss on multiplicity grounds as a question of law reviewed *de novo*. *United States v. Shrader*, 75 F.3d 300, 313 (4th C 6ir. 2012), *United States v. Goodine*, 400 F.3d 202, 207 n. 7 (4th Cir.2005).

Mr. Chin moved dismiss Count One of the second superseding indictment on multiplicity grounds asserting Count One charging enticement is a lesser included offense of Count Two charging production of child pornography. The district court erred by denying the motion.

Multiplicity occurs when a single offense is charged in multiple counts of an indictment. *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993); *United States v. Lawing*, 703 F.3d 229, 235, n.1 (4th Cir. 2012). The rule against multiplicitous prosecutions is based on the Fifth Amendment's Double Jeopardy

Clause, which protects against multiple punishments for the same offense. *United States v. Lohse*, 797 F.3d 515, 523 (8th Cir. 2015). An indictment is multiplicitous if the same act is charged as violating two distinct statutory provisions where one is the lesser included offense of the other. *Rutledge v. United States*, 517 U.S. 292, 297 (1966). The test for determining whether there are two separate offenses is "whether each provision requires proof of a fact which the other does not." *Rutledge*, 517 U.S. at 297, quoting *Blockberger v. United States*, 284 U.S. 299, 304 (1932).

The elements which the Government had the burden of proving for the 18 U.S.C. § 2422(b) enticement offense charged in Count Two were:

> (1) The defendant used a facility or means of interstate commerce;
> (2) To knowingly persuade, induce, entice, or coerce;
> (3) Another person who had not yet attained the age of eighteen years;
> (4) To engage in a sexual activity for which any person could have been charged with a crime, specifically, the offense of production of child pornography.

*United States v. Banker*, 876 F.3d 530, 532-533 (4th Cir. 2017);

*United States v. Engle*, 676 F.3d 405, 423 (4th Cir. 2012);

*United States v. Fugit*, 703 F.3d 248, 253 (4th Cir.2012).

To satisfy that fourth element and obtain a conviction under 18 U.S.C. § 2422(b), the Government must also prove the additional elements of the offense for which the defendant could have been charged with a crime. *United States v. Kaye*,

24

243 Fed. App'x 763, 766 (4th Cir. 2007). Therefore, in this case, the same elements which the Government had the burden of proving for the 18 U.S.C. § 2251(a) production offense charged in Count One are incorporated within the fourth required element for Count Two. Given the manner in which the Government charged Count Two, Count One necessarily becomes the lesser included offense to Count Two.

The district court declined to grant the pretrial motion to dismiss opining:

> At this point in proceedings, the Court cannot conclude that punishing Defendant under both §§ 2422(b) and 2251(a) would violate Double Jeopardy—rather, the issue presents a mixed question of law and fact that depends on (1) whether Defendant is convicted, and (2) if so, the conduct for which he is convicted. Because it is unclear at this stage whether Counts One and Two involve the same conduct, the Court will allow both charges to proceed. Should Defendant be convicted under both counts, the Court will revisit the issue to determine whether the charges are multiplicitous such that Defendant can only be punished for one of them.

JA240.

The district court did not however revisit the issue following the trial although it did impose concurrent sentences. The proof at trial was such that the jury necessarily found that the "sexual activity for which any person could have been charged with a crime, specifically, the offense of production of child pornography" element of the 18 U.S.C. § 2422(b) enticement offense in Count Two involves the same conduct establishing the elements of the 18 U.S.C. § 2251

production offense charged in Count One. Therefore, the district court erred by not dismissing Count One of the second superseding indictment.

**3. The district court erred by denying Chin's motion to suppress evidence from the warrantless search of Mr. Chin's cellphones including all data and metadata on the devices, and all evidence derived from the illegal searches as fruits of the poisonous tree.**

This Court reviews the lower court's factual findings relative to a motion to suppress for clear error and the district court's legal determinations *de novo*." When the district court has denied a defendant's suppression motion, this court views the evidence in the light most favorable to the government." *United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012).

The district court erred by denying Mr. Chin's motion to suppress the introduction of all evidence obtained through a forensic analysis of the contents of the defendant's Samsung Galaxy 9 smartphone that was illegally seized on March 21, 2022. This includes all of the suspected images of child pornography which the Government introduced at trial. The court below also erred by admitting custodial statements made by Mr. Chin which are fruit of the poisonous tree as his statements were directly prompted by the illegal seizure and search of his phone and his detention by border agents.

Furthermore, the entirety of the trial testimony from Minor Victim 1 and

Minor Victim 2, concerning their communications with the defendant through the Snapchat social media forum and other media should also have been suppressed because their identities and testimony, were only developed as the direct result of information first generated from the March 21, 2022, illegal search and seizure of the defendant's smartphone. Likewise, the testimony of Leland Pickering the HSI forensic examiner who conducted the examination of the phone's data should have been suppressed along with the exhibits taken from either Mr. Chin's devices or devices used by the minor victims because all of this was "fruit of the poisonous tree" branching from the initial illegal search and seizure.

The border agents lacked reasonable suspicion that digital contraband existed on Mr. Chin's smartphone justifying the seizure and the manual search of the device when he reentered the country.

On March 21, 2022, Mr, Chin walked into Mexico through the Paso Del Norte port of entry at El Paso, Texas. Later that day, Mr. Chin attempted to reenter the United States through the same port of entry. Around 7:30 p.m. on March 21, 2022, Chin presented his driver's license to border patrol officers for re-entry and was told to submit his thumb for a fingerprint scan. JA1029. The prints were run through a law enforcement database which advised the border patrol officers that Chin was a registered sex offender. He has a 2014 felony conviction for possession of child pornography from the Superior Court of California, County of San

Francisco. JA1040. The border patrol officers who were processing Mr. Chin had no other information which suggested that there were any active arrest warrants in the United States for the defendant. The officers had no information which suggested that the defendant had engaged in any criminal conduct before crossing the border into Mexico or that he had committed any crime during his brief stay in Mexico. Finally, the officers had no information that the defendant was currently under investigation by any law enforcement agency in the United States.

After learning Chin's status as a sex offender, the border patrol officers directed him to another room for a secondary inspection. At that time, he was ordered to turn over his two smartphones and surrender the passcodes to open both smartphones. JA1029. Mr, Chin recalls asking for a lawyer at this time and being told by the border patrol officers that they had not reached the point for him to need a lawyer. JA83. Chin then obeyed the officers' order and wrote the passcodes on a piece of paper but told the officers that they did not have his permission to open and examine his smartphones. JA83. The smartphones were taken to another office where two border patrol officers conducted a manual search of the devices combing through the files and data on the phone. JA1029.

Approximately forty minutes into this manual search of the Chin's Samsung Galaxy 9 smartphone, border patrol officer Monica McQuality, reported seeing pictures of a fully clothed suspected underaged female as well as a suspected

underaged female exposing her breasts. JA84. At that time, Officer McQuality reportedly stopped her manual search of this smartphone and reported her findings to a second border patrol officer, Wally Terrazas. Officer Terrazas then questioned Mr. Chin about the photograph of a suspected female minor which was visible on the screen saver for the Samsung Galaxy 9 smartphone. JA84. The defendant was effectively in custody, as the officers had seized his phones and he was not free to leave. No Miranda warnings were provided to the defendant before this questioning began. JA84.

When asked by Officer Terrazas, Chin reportedly responded that the person was a friend whom he met online about a year and a half ago. The defendant was asked if she was a relative. The defendant reportedly said she was not. Officer Terrazas then asked the defendant how old the female was. According to Terrazas, Mr. Chin allegedly responded that she was 13 years old. JA84-85. Chin was not asked any additional questions and remained detained in the secondary inspection area. At this point, the Border Patrol contacted Homeland Security Investigations ("HSI") which sent two agents to more extensively search the contents of the Mr. Chin's smartphone. Around 10:30 p.m. on March 22, 2022, the two HSI agents conducted a second manual search of the Chin's Samsung Galaxy smartphone. The agents reported finding suspicious photographs involving a minor which appeared to be screen shots taken from the Chin's Snapchat communications with others.

These photographs were located within the gallery application. JA85. Several of the pictures depicted a female whose age the agents considered to be between 13 and 15 years old exposing her breasts. There were also two pictures in the gallery of a female's vagina in which no other portion of the female's body was visible. JA85. Agents also reviewed a portion of Snapchat conversations with a female whose Snapchat profile picture matched several of the photos of the female whose image they had just observed. The profile included the female's full name and the username for the Snapchat profile. One of the Snapchat messages which the female had sent was "I thought that anyway maybe you could leave and come back when I graduate high school." JA85-86. Two other viewed messages included "My little cum kitten" and "I'm only into you." JA86.

Around 11:45 a.m., the two HSI agents entered the room where the Chin was detained and provided him with Miranda rights. Mr. Chin exercised his right to remain silent and requested to speak with a lawyer. No further questions were asked by the HSI agents. JA86. After being detained more than four and a half hours, Mr. Chin was released and allowed to re-enter the United States without being arrested on any criminal charges. His two smartphones were not returned and remained seized and in the custody of HSI. JA86.

HSI soon found a Facebook page that belonged to the female whose images had been found on Mr. Chin's phone and learned that she was then an eighteen

year old student at Spring Valley High School in West Virginia and had been seventeen years old at the time of several of her Snapchat interactions with the defendant between December 12, 2020, and February 14, 2021, as charged in the Second Superseding Indictment. JA86.

On or about March 25, 2022, HSI agent Grijalva submitted an application for a search warrant for the contents of the Chin's Samsung smartphone. The search warrant application was approved. JA87. However, the application for the warrant was tainted by information obtained entirely through the earlier two illegal searches of Mr. Chin's smartphone. That information should not have been considered and without it, there was insufficient probable cause to support the issuance of a search warrant. Thus, the evidence obtained through execution of the search warrant, including all forensic evidence admitted at trial, should have been excluded as fruit of the poisonous tree.

On or about March 29, 2022, Minor Victim 1 was interviewed in conjunction with HSI's investigation. Minor Victim 1 alleged that Chin had requested she take pictures of her body to send to him. During the interview, Minor Victim 1 was shown two images of a vagina that appeared within the gallery application on January 9, 2021. Minor Victim 1 identified the images as having been taken at her home and deduced that she had previously sent those images, and as well as other non-pornographic images of herself to Chin. JA87. This

identification should also have been excluded at trial as fruit of the poisonous tree.

The border patrol officers lacked any reasonable suspicion that any digital contraband existed in the defendant's smartphone justifying the initial seizure of Mr. Chin's smartphone or the manual searches of its contents during the defendant's reentry to the United States. Every single incriminating piece of evidence admitted in this case was obtained directly and solely because of the initial illegal seizure and manual search of Mr. Chin's phone. All the evidence is tainted by the illegality of that action and should have been suppressed. Without that evidence. Mr. Chin could not have been convicted.

In the absence of a judicially authorized search warrant, the Fourth Amendment requires that any searches of private property fall within the scope of a delineated exception to the search warrant. *Riley v. California*, 573 U.S. 373, 382 (2014); *United States v. Aigbekaen*, 943 F.3d 713, 720 (4th Cir. 2019); *United States v. Kolsuz*, 890 F.3d 133, 137 (4th Cir. 2018).

One exception to the warrant requirement is the border search exception, which recognizes significant sovereign interests in monitoring incoming traffic to the United States. *Aigbekaen*, 943 F.3d at 720. However, the actions here by the border patrol officers in seizing Mr. Chin's smartphones and reviewing their contents without his consent do not fall within the scope of the recognized border search exception. The Supreme Court has held that in certain instances "highly

32

intrusive searches" of property at border crossings may qualify as being considered "nonroutine" and require some level of individualized suspicion before proceeding. See *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004); *Aigbekaen*, 943 F.3d at 720.

In *Riley v. California*, 573 U.S. 373, 385-391 (2014), the Supreme Court recognized that the significant privacy interests associated with the vast quantities of sensitive and personal information contained within cell phones required police officers to obtain search warrants before examining the contents. This Court should hold the rationale *Riley* decision was applicable in the circumstances here presented and that the court below erred by denying his motion to suppress the evidence. At a minimum, even border patrol officers should be required to have reasonable suspicion that some form of digital contraband exists on a smartphone before seizing and conducting a non-consensual search of its contents. At the time of the Mr. Chin's border crossing, the border patrol officers lacked any reasonable suspicion that he had engaged in any criminal conduct or that there would be contraband images of child pornography or anything else on his smartphone.

That border patrol officers were aware of the Mr. Chin's status as a registered sex offender does not provide reasonable suspicion to warrant browsing through the contents of his smartphone. By analogy, a police officer being aware of a person's criminal history, by itself, does not provide reasonable suspicion in order

to conduct an investigative stop of a person. *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013); *United States v. Foster*, 634 F.3d243, 246-247 (4th Cir. 2011); *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997).

The test for determining whether an individual is "in custody" for Miranda purposes is whether under the totality of circumstances, the suspect's freedom of action is curtailed to a degree associated with an arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *United States v. Leggette*, 57 F. 4th 406, 410 (4th Cir. 2023). In the border crossing context, arrest occurs when a reasonable person would believe that he is being subjected to more than temporary detention occasioned by border crossing formalities. *United States v. Price*, 980 F.3d 1211, 1225 (9th Cir. 2020); See also *United States v. Ventura*, 85 F.3d 708, 710-711 (1st Cir. 1996). There is a two part test for determining whether the nature of a suspect's detention requires Miranda warnings. The first is to determine whether a reasonable person in that situation would have felt that he or she was not at liberty to terminate the questioning and leave. *Leggette*, 57 F.4th at 410. The second evaluates whether the relative environment presents the same inherently coercive pressures as the type of questioning which occurs at a police station. *Id*.

Following the seizure of his two smartphones, Chin was told to sit on a bench within the confines of a secondary inspection area. He was unable to leave and enter the country without approval of the border patrol officers. JA83. A

reasonable person in his position would not have considered himself free to leave or to otherwise terminate any questioning which was initiated by the border patrol officers. Moreover, once Chin was later given his Miranda warnings, he exercised his right to remain silent with no additional questions being asked by the HSI agents. This shows that Mr. Chin would have not answered the first round of questions if the border patrol officers had provided Miranda warnings.

The subsequent forensic analysis of the defendant's smartphone as well as the anticipated testimony from Minor Victim 1 were developed entirely from the information obtained directly from the illegal searches of the defendant's smartphone and should be considered inadmissible as fruits of the poisonous tree. In this case, the subsequent investigation undertaken by HSI to determine the identity and whereabouts of Minor Victim 1 took place as the result of the information generated from illegal seizure and searches as opposed to information derived from an independent source. The information obtained from the two manual searches were set forth in the March 25, 2022, application for search warrant for the defendant's smartphone. HSI had no other facts that would suggest that Chin possessed child pornography on his phone to support the issuance of the March 25, 2022, search warrant. The subsequent discovery of the whereabouts of Minor Victim 1, as well as her March 29, 2022, interview, came about only from the previous review of the Snapchat conversations during the second basic search.

The exclusionary rule prohibits the admission of evidence that is acquired as a direct or indirect result of an illegal search. *United States v. Mowatt*, 513 F.3d 395, 403 (4th Cir. 2008). Where no reasonable suspicion exists to justify the initial seizure and search of the defendant's smartphone, and no independent factual basis exists for the issuance of the search warrant, all subsequently obtained evidence, either tangible or testimonial, obtained as a result of an illegal search should be excluded as fruit of the poisonous tree. See *Utah v. Strieff*, 579 U.S. 232, 237-238 (2016); *United States v. Terry*, 909 F.3d 716, 720 (4th Cir. 2018).

In this matter, the entirety of the government's evidence, including the data on Mr. Chin's phone, the existence of and identities Minor Victims 1 and 2, their testimony, the forensic examination of the phone, the testimony of Leland Pickering the forensic examiner and all of the government's exhibits, was obtained directly and solely as a result of the illegal search. Mr, Chin asks this Court to find the district court committed reversible error by denying his motion to suppress and permitting the government to admit the illegally obtained evidence without which he could not have been convicted.

**4. The district court erred by denying Chin's motion to exclude Rule 404 (b) evidence.**

This court reviews evidentiary rulings for abuse of discretion. *United States v. Freitekh*, 114 F.4th 292, 315 (4th Cir. 2024). In conducting this review, this court

will identify an abuse of discretion if the court's decision was guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *United States v. Bush*, 944 F.3d 189, 195 (4th Cir. 2019) The district court erroneously declined to exclude prior "bad acts" evidence that the defendant moved to exclude. Relevant to this appeal, Mr. Chin sought to exclude:

1. Communications between Defendant and Minor Victim 1, as well as any testimony pertaining to these communications, sent following the charged time period—that is, after February 14, 2021. JA108

2. Evidence of defendant's cross-country trip from California to West Virginia in March 2022, which occurred after the charged time period. JA109-10.

3. Testimony from and any digital images of Minor Victim 2, as Mr. Chin was not charged with any conduct related to such images. JA110-11.

Mr. Chin argued this evidence was inadmissible because it is extrinsic to the charged offenses and was only being used to show propensity. Chin further asserted that even if the challenged evidence was relevant to an issue other than character and propensity, such probative value was substantially outweighed by the risk of unfair prejudice pursuant to Rule 403 of the Federal Rules of Evidence.

The government argued first that such evidence was intrinsic to the charged offenses and also that even if extrinsic, the evidence was admissible for purposes other than showing propensity to act in accordance with character. The district

37

court agreed with the government and incorrectly found the evidence both intrinsic and admissible for purposes other than proving defendant's character. JA233-35.

Federal Rule of Evidence 404(b)(1) prohibits using extrinsic evidence of prior bad acts "to show that on a particular occasion the person acted in accord with the character." The court below incorrectly held the evidence admissible for permitted purposes which include "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evidence 404(b)(2). Evidence can be admitted for these purposes so long as it is (1) relevant to an issue other than the general character of the defendant; (2) probative of an essential claim or element of the charged offense; (3) reliable; and (4) its probative value is not substantially outweighed by unfair prejudice. *United States v. Brizuela*, 962 F.3d 784, 797 (4th Cir. 2020) (quoting *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017)).

The court below found the evidence was intrinsic and that even if it were not intrinsic to the charged conduct, the "bad acts" evidence at issue was admissible for permitted purposes under Rule 404(b). JA235. The court found the evidence intrinsic because, in its view, text messages between Mr. Chin and Minor Victim 1 sent after February 2021 were relevant as part of the ongoing story of the relationship between him and Minor Victim 1, to show his intent to entice Minor Victim 1, and that he knew her age during the charged time period. JA235. The

court below further found that Mr. Chin's trip to West Virginia in March 2022 was admissible as probative to his identity as the person behind the messages with Minor Victim 1 and his intent to entice Minor Victim 1. JA235. Finally, the court ruled evidence related to communications with and images of Minor Victim 2 admissible opining it was necessary to complete the story of the crime and show how Defendant met Minor Victim 1. JA235. The court alternatively held that even if it was not intrinsic, this evidence was admissible under Rule 404(b) to prove this evidence to prove Defendant's intent, plan, and knowledge of Minor Victim 1's age. JA235.

In ruling this evidence admissible, the district court did not apply the Rule 403 balancing test and offered no basis for the at best implicit finding the that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Mr. Chin argues the evidence was extrinsic, was propensity evidence not properly admitted for a permitted purpose, was highly and unfairly prejudicial, and that the prejudice substantially outweighed the probative value it had as to establishing any essential element of the offenses. Mr. Chin requests that this court find the court below abused its discretion by admitting this evidence, vacate his convictions and remand this matter for a new trial.

**5. The district court erred by denying Chin's objection to impeachment with a prior inconsistent statement where the statement in question was the statement of Chin's counsel and not a statement by Chin.**

This Court reviews non-constitutional evidentiary rulings for abuse of discretion. *United States v. Seward,* 135 F.4th 161 (4th Cir. 2025) (quoting *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997)).

During cross examination of Mr, Chin, he was asked whether when questioned by a Border Patrol officer about an image of a young female found on his smartphone he told the officer he thought the female was 13 years old. JA824. Mr. Chin responded: "No, I never said that." JA825. Counsel for the government then requested a sidebar and informed the court she intended to impeach Mr. Chin with a prior inconsistent statement contained in a motion to suppress (that statement, and other evidence as discussed above) which had been filed by Mr. Chin's prior counsel whom Mr. Chin had terminated due to disagreement and dissatisfaction. JA825.

The pertinent statement was: "Terrazas then asked the defendant how old the female was. The defendant responded that she was 13 years old." JA85. The government argued this statement by Mr. Chin's former counsel constituted a judicial admission that was binding upon Mr. Chin and could be used as a prior inconsistent statement to impeach Mr. Chin's trial testimony that he did not tell the

officer he thought the female was 13 years old. JA825, Trial counsel for Mr. Chin argued the statement made by a prior lawyer in a pretrial motion where the truth of the matter of whether Mr. Chin made the statement that he thought the female was 13 years old was not the issue should not be attributed to Chin. The reason prior counsel included the statement in the motion was merely to identify it as an alleged statement among those counsel was asserting should be suppressed. Trial counsel argued allowing impeachment with prior counsel's statement was improper and he objected. He argued the use of the statement taken out of context was misleading because the prior lawyer had obviously pulled the relevant exchange from the report of investigation submitted by the Border Patrol officer and not from either first hand knowledge of what Mr. Chin did or did not say to the officer or from Mr. Chin directly. JA825-826. Counsel strenuously argued that the statement in the motion was "not saying that this is not what my client said. He is saying this is what my client is alleged to have said." JA827. Obviously, when seeking to suppress a statement law enforcement alleges was made by a defendant, counsel for the defendant will identify the statement as portrayed by law enforcement as one he is seeking to have suppressed. Identifying the alleged statement should not be conflated with counsel adopting law enforcement's allegations concerning the content of the statement as true.

In this context it is fundamentally unfair to conflate prior counsel's

identification of a statement, that a law enforcement officer alleged was made by his client, with prior counsel having stipulated his client actually made that statement. Perhaps, prior counsel should have been more clear and interposed "alleged" or allegedly" into his description of the events he set forth in the motion but that omission hardly obscures the fact that the intent of prior counsel was merely to identify a statement as described by law enforcement which he was seeking to suppress and not to make any admission whatsoever as to the accuracy or truth of the officer's recounting of the verbal exchange.

Appellant has not discovered any published decisions issued by the Fourth Circuit specifically addressing whether statements contained in a party's motion or brief constitute a judicial admission. The Fourth Circuit has addressed the issue in the context of statements of fact made by counsel during the course of the attorney-client representation. See *United States v. Blood*, 806 F.2d 1218, 1221 (4th Cir. 1986) ("[A] clear and unambiguous admission of fact made by a party's attorney in an opening statement in a civil or criminal case is binding upon the party."). But see *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24 (4th Cir.1963), *cert. denied*, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964) ("a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission.").

Here, we do not have a clear and unambiguous admission of fact by Mr. Chin's prior counsel. The court below ignored the context and incorrectly characterized prior counsel's intent and purpose when it opined prior counsel included the officer's version of what was said, "not as a reference to an accusation that the defendant made this statement but, rather, it is the defendant making this statement and then seeking to suppress...." JA828.

Clearly, permitting the government to impeach Mr. Chin with the statement identified by his counsel in a motion only for the purpose of showing the court what he was seeking to suppress was highly prejudicial. This improper impeachment served both to substantively provide direct evidence Mr. Chin believed the female was only 13 years old and to unfairly undermine his credibility before the jury.

The unfairness was exacerbated when once Mr. Chin denied telling the officer he thought the female was 13 years old, the prosecutor engaged in highly argumentative tactics and went so far as to make argument before the jury as to the relevant law after Chin denied making the statement and stated he never told his lawyer to include it in his motion:

> Q. But it's in your filing. **That's an *admission that you have made* in this case, was that you said this girl was 13**.
> A. I mean, that's why I had to fire him, because of all the wrongdoings he was doing in my case.
> Q. So, he just made up a fact to make you look bad?

JA829 (emphasis added) (No objection was made).

Case law on this issue is sparse and not directly on point but certain decisions from other jurisdictions are instructive. The Third Circuit has held, in the context of a summary judgement motion in a civil case, that unsubstantiated arguments made in briefs or at oral argument do not constitute evidence for purposes of consideration. See, *Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993) ("we have repeatedly held that unsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by this Court"); *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989) ("statements made in briefs are not evidence of the facts asserted); *Jersey Cent. Power Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985) ("[l]egal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion"). See also, *In re Spring Ford Industries, Inc.*, 2005 WL 984180, at *6 (Bankr. E.D. Pa. Apr. 19, 2005) ("statements in briefs are not evidence); *Clements v. Diamond State Port Corporation*, 2004 WL 2223303, at *6 (D. Del. Sept. 30, 2004) ("[t]he Third Circuit has repeatedly held that unsubstantiated arguments made in briefs are not evidence to be considered by the Court").

Other circuits are not as adamant as the Third Circuit but, in *United States v. Belculfine*, 527 F.2d 941(1st Cir. 1975) the court held:

> . . . judicial admissions generally arise only from deliberate voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact. . . considerations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admission in appropriate cases.

Id. At 944.

The Second Circuit, albeit in a copyright infringement civil case, held in *Hub Floral Corp. v. Royal Brass Corp.*, 454 F.2d 1226 (2d Cir. 1972), plaintiff, in a brief in support of a motion for summary judgment, admitted that he had failed to properly register the copyright. Defendants sought to use the admission to dismiss plaintiff's action. The Second Circuit refused to treat the statement as a judicial admission because the statement was not in a pleading and not part of the record. The *Hub Floral* court repeatedly described the statement as inadvertent as if to suggest that inadvertent statements should not be judicially admitted.

The Sixth Circuit recognizes that courts have **the discretion** to consider a statement made in a brief to be a judicial admission, binding on both the appellate court and the trial court. *United States v. Burns*, 109 F.Appx. 52, 58 (6th Cir. 2004) "[I]n order to qualify as judicial admissions, an attorney's statements must be **deliberate, clear and unambiguous**.'" Id. Emphasis added (citing *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997)

The Supreme Court has not directly addressed whether a statement in a

motion or memorandum of law should be treated as a judicial admission, but it has alluded to the subject. In *United States v. Fruehauf*, 365 U.S. 146 (1961) it observed that to be binding, judicial admissions must be unequivocal.

In the circumstance present in this matter, the district court abused its discretion by permitting the government to impeach Mr. Chin with a statement made by his prior counsel in a motion to suppress where the purpose of counsel was to identify an alleged statement he sought to suppress and not to make an admission of fact, a stipulation, or to vouch for the veracity of the Border Patrol officer's recorded recollection of a statement attributed to Mr. Chin. The error was highly prejudicial because it both put incriminating words in Mr. Chin's mouth before the jury and intentionally undermined his perceived credibility in front of the jury. Mr. Chin asks this court to vacate his conviction and sentence and remand this matter for a new trial.

**6. The sentence was procedurally and substantively unreasonable.**

As a general matter, this Court reviews any sentence "whether inside, just outside, or significantly outside the Guidelines range" for an abuse of discretion. *United States v. McDonald* , 850 F.3d 640, 643 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). Procedural error may include, *inter alia*, misapplying the sentencing guidelines, failing to consider the § 3553(a) factors, selecting a sentence based on clearly

erroneous facts or failing to adequately explain the chosen sentence. *Gall v. United States*, 552 U.S. at 51. Pursuant to this standard, the district court's legal conclusions are reviewed de novo and factual findings are reviewed for clear error. *United States v. Gomez-Jimenez* , 750 F.3d 370, 379-80 (4th Cir. 2014); *United States v. Horton*, 693 F.3d 463, 474 (4th Cir. 2012).

As dictated by *Gall*, this Court first reviews for procedural error, then "[i]f and only if no such procedural errors are found this Court will assess the substantive reasonableness of a sentence for abuse of discretion. *McDonald*, 850 F.3d at 643 (alteration in original) (quoting *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)).

Mr. Chin asserts that the 37 year (444 month) sentence imposed is procedurally and substantively unreasonable. The sentence is procedurally unreasonable because the district court erroneously denied Mr. Chin's objections to the application of several sentencing guidelines provisions and incorrectly calculated Mr. Chin's offense level and advisory sentencing range. The sentence is substantively unreasonable because 37 years imprisonment is a punishment greater than necessary to fulfill the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

Mr. Chin was convicted of three offenses. COUNT ONE, production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e), carries a statutory penalty of 25 to 50 years. COUNT TWO, attempted enticement of a minor to

engage in an illegal sex act in violation of 18 U.S.C. § 2242 (b) and § 2247, carries a statutory penalty of 10 years to life. COUNT THREE, committing a felony against a minor while being required to register as a sex offender in violation of 18 U.S.C. § 2260A, carries a statutory penalty of 10 years to be imposed consecutively.

The district court calculated Mr. Chin's total offense level to be 43 and his criminal history category as II, resulting an advisory sentencing range of Life as to COUNTS ONE and TWO; COUNT THREE required a 10 year consecutive sentence. After determining the applicable guideline range and the grounds for a variance the sentencing court sentenced Mr. Chin, to a term of 37 years .

The first errors asserted at sentencing is the denial of the objections to Paragraphs 38, 46 and 54 of the presentence investigation report (hereinafter "PSR). Mr. Chin objected to application of the specific offense characteristics found at U.S.S.G. § 2G2.1 (b)(2)(A) and U.S.S.G. §2G1.3(b)(4)(A), which increase the offense level by two levels where the offense involved the commission of a sexual act or sexual contact. Paragraph 38 related to COUNT ONE and Paragraphs 46 and 54 to COUNT TWO but each involves application of the same legal standard to the same alleged conduct. It was undisputed that no sexual contact occurred between Mr. Chin and the alleged victims. Furthermore, there was no evidence that Mr. Chin personally committed a sexual act during any interaction

with the alleged victims. The court based its denial of the objections on images of one of the victims masturbating which were found on Mr. Chin's phone.

Mr. Chin asserts that the "sexual act enhancement" does not apply to the facts in this case because Mr. Chin did not himself commit a sex act as defined in 18 U.S.C. § 2246 (2). That Mr. Chin was convicted of causing Minor Victim 1 to produce child pornography in COUNT ONE and inducing her to do so in COUNT TWO is not tantamount to the jury finding Mr. Chin committed a sexual act. Furthermore, the application of the "sexual act enhancement" in this matter creates a clear case of double counting because his convictions rests on the fact Minor Victim 1 made and sent him images of her committing a sexual act and that fact is incorporated into the base offense levels for COUNTS ONE and TWO. Increasing the offense level for a sexual offense because of sexual activity being portrayed in images is double counting. The government arguing in support of the enhancement cited *United States v. Skinner*, 70 F.4th 219 (4th Cir. 2023). JA982. *Skinner*, however involved the **defendant** in a production of child pornography transmitting images to a victim of himself masturbating during his interactions with a minor. In *Skinner*, the defendant did not receive an enhancement because of a sexual act by the victim and the double counting issue did no exist because a defendant can cause or entice a minor to produce child pornography without personally committing a sexual act. The net effect of the enhancements applied in Paragraphs

49

38, 46 and 54 (due to the operation of grouping rules and application of a cross reference) was to increase Mr. Chin's total offense by two levels. Mr. Chin asserts that erroneously increasing the total offense level by 2 levels was reversible procedural error requiring resentencing.

Mr. Chin next objected to application of the Chapter 3 obstruction of justice enhancement found at U.S.S.G. § 3C1.1 which was applied in Paragraphs 42, 49 and 58 of the PSR. (Again, though applied in three distinct paragraphs the net effect was to increase Mr. Chin's total offense level by 2 levels). The PSR recommended application of the enhancement based on the allegation that Mr. Chin testified falsely at trial and no other basis was at issue. At sentencing Mr. Chin argued that he should not have been penalized for exercising his 5th Amendment right to testify in his own behalf and providing testimony he subjectively believed to be true. JA983-984. The district court disagreed and stated it found that Mr. Chin lied during his testimony a number of times. JA984. The district court characterized Chin's testimony as being "permeated" by lies, containing "obvious falsehoods" JA984. The sentencing court provided examples of specific testimony it believed untruthful but did not expressly find that such statements necessarily "reflect[ed] a willful attempt to obstruct justice." *See* § § 3C1.1, application Note 2. Without willfulness and intent to deceive a statement, even if untrue, should not be the basis of the obstruction of justice enhancement.

The denial of this objection provides another instance of reversible procedural error necessitating a remand for resentencing.

The final sentencing objection at issue is the court below's denial of Mr. Chin's objection to Paragraph 62 of the PSR which recommended a 5 level increase of the offense level pursuant to U.S.S.G. § 4B1.5 (b). This guideline provision applies where the instant conviction is a covered sex crime, neither the career offender guideline nor § 4B1.5 (a) apply, and "the defendant engaged in a pattern of activity involving prohibited sexual conduct[.]" U.S.S.G. § 4B1.5 (b). Only the latter factor was contested at sentencing. A finding that the defendant "on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor" is required for this enhancement to apply. U.S.S.G. § 4B1.5, Application Note 4(B)(I). Over Mr. Chin's objection, the district court adopted the PSR's position that the enhancement applied. In reaching this conclusion, the district stated, without identification of specific acts occurring on specific dates with a specific victim, that:

> He made a decision to try to travel to West Virginia tomeet them. He had contact with them about meeting here. Clearly throughout this, I think, approximately two year period of time, he engaged in numerous acts that resulted in numerous instances where one or the other of these victims provided him with pictures that amount to child pornography. So I think it's well within this guideline.

JA986.

First, Mr. Chin asserts that his travel to West Virginia while in evidence at trial did not even arguably involve sexual conduct with any minor and cannot provide any basis for the enhancement. Second, Mr. Chin asserts that in order to apply the enhancement due process requires that the sentencing court specifically identify the time, place, nature of the conduct, and the parties involved, for at least two instances of prohibited sexual conduct with a minor so that this court can properly review such factual findings for clear error. As the district court failed to do so, it committed reversible error establishing another reason why, should the convictions be upheld, this matter must be remanded for resentencing.

In sum, the district court increased Mr. Chin's offense level by 9 levels pursuant to these overruled objections. Had the objections been sustained, Mr. Chin's total offense level would have been 34, which combined with criminal history category II results in an advisory sentencing range of 168-210 months, not LIFE as found by the court below. These procedural errors are not harmless under the rubric of *Gall* and its progeny. See*: Gall v. United States*, 552 U.S. 38 (2007). Despite the fact COUNT TWO carries a 25 year mandatory minimum and COUNT THREE mandates a 10 year consecutive sentence, there is a reasonable probability that but for these errors the district court would have imposed a sentence of less than the 37 year sentence it did impose. The sentence is procedurally unreasonable because the district court incorrectly calculated the guideline range. The sentence is

also substantively unreasonable because it is greater than necessary to fulfill the purposes of 18 U.S.C. § 3553 (a)(2).   Should the Court affirm the convictions, Mr. Chin seeks a remand for resentencing.

## CONCLUSION AND RELIEF SOUGHT

Mr. Alex Tai Chick Chin, respectfully requests this court to vacate his convictions and sentence and remand this matter for a new trial and further proceedings. In the alternative, should the court affirm the convictions, he requests this court vacate his sentence and remand the matter for resentencing.

## REQUEST FOR ORAL ARGUMENT

The appellant respectfully requests, pursuant to Rule 34 of the Federal Rules of Appellate Procedure, and Rule 34(a) of the Local Rules of the United States Court of Appeals for the Fourth Circuit, that oral argument be heard in this case. Oral argument should be heard because Appellant believes that this Court's decisional process would be significantly aided by oral argument because this case involves complex fact pattern and important constitutional issues. As this issue involves a fundamental liberty interest of the appellant and has consequences touching many individuals within this judicial circuit, this appeal should not be denied without appellant having opportunity to be heard and to address the issues.

**RESPECTFULLY SUBMITTED** this 2nd Day of December, 2025.

**ALEX TAI CHICK CHIN**,

By counsel,

*s/ David Schles*
David Schles, WV BAR #6375
815 Quarrier Street
Suite 306
Charleston, WV 25301
Schleslaw@gmail.com
*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 25-4259          Caption: US v. CHIN

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____12,740_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 2016 _____ [*identify word processing program*] in
14 Point Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) David Schles _____

Party Name Appellant _____

Dated: 12/2/2025 _____