No. 25-4259

In The

# United States Court of Appeals

**For The Fourth Circuit**

---

**UNITED STATES OF AMERICA,**

**Appellee,**

**v.**

**ALEX KAI TICK CHIN,**

**Appellant.**

---

**Appeal from the United States District Court**
**for the Southern District of West Virginia**
***The Honorable Robert C. Chambers, United States District Judge***

---

**Brief of Appellee the United States of America**

---

**MOORE CAPITO**
**United States Attorney**

**Jennifer Rada Herrald**
**Assistant United States Attorney**
**300 Virginia Street, East, Room 4000**
**Charleston, West Virginia 25301**
**(304) 345-2200**

***Attorneys for the United States of America***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii

STATEMENT OF JURISDICTION ................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................ 1

STATEMENT OF THE CASE ........................................................... 4

SUMMARY OF ARGUMENT ........................................................... 17

ARGUMENT

I. The district court did not err by denying Chin's motion to dismiss the superseding indictment for an alleged violation of the Speedy Trial Act........................................................18

II. The district court did not err in denying Chin's motion to dismiss Count One of the second superseding indictment as multiplicitous..................................................................23

III. As basic manual cell phone searches at the border do not require reasonable suspicion, the district court did not err in denying Chin's motion to suppress....................................29

IV. The district court did not abuse its discretion when it denied Chin's motion to exclude various evidence after finding the evidence was either intrinsic to the offenses charged or admissible pursuant to Federal Rule of Evidence 404(b)....34

V. The district court did not abuse its discretion by permitting the United States to impeach Chin with a factual statement made in his motion to suppress..........................................43

VI. Chin's sentence was procedurally and substantively reasonable..................................................................49

CONCLUSION ........................................................................................56

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Alasaad v. Mayorkas*,
988 F.3d 8 (1st Cir. 2021) .................................................. 30, 31

*Albernaz v. United States*,
450 U.S. 333 (1981) .................................................. 25

*Almeida-Sanchez v. United States*,
413 U.S. 266 (1973) .................................................. 30

*Arizona v. Gant*,
556 U.S. 332 (2009) .................................................. 29

*Blockburger v. United States*,
284 U.S. 299 (1932) .................................................. 25

*Dep't of Homeland Sec. v. MacLean*,
574 U.S. 383 (2015) .................................................. 21

*Gall v. United States*,
552 U.S. 38 (2007) .................................................. 49

*Riley v. California*,
573 U.S. 373 (2014) .................................................. 31, 32, 33

*Russello v. United States*,
464 U.S. 16 (1983) .................................................. 22

*Rutledge v. United States*,
517 U.S. 292 (1966) .................................................. 25

*Tun-Cos v. Perrotte*,
922 F.3d 514 (4th Cir. 2019) .................................................. 47

*United States v. Andrews*,
808 F.3d 964 (4th Cir. 2015) ........ 52

*United States v. Bajoghli*,
785 F.3d 957 (4th Cir. 2015) ........ 34, 35, 42

*United States v. Banker*,
876 F.3d 530 (4th Cir. 2017) ........ 48

*United States v. Basham*,
561 F.3d 302 (4th Cir. 2009) ........ 38

*United States v. Blood*,
806 F.2d 1218 (4th Cir. 1986) ........ 44

*United States v. Booker*,
543 U.S. 220 (2005) ........ 49

*United States v. Byers*,
649 F.3d 197 (4th Cir. 2011) ........ 34, 40

*United States v. Cano*,
934 F.3d 1002 (9th Cir. 2019) ........ 32

*United States v. Carrasquillo*,
667 F.2d 382 (3d Cir. 1981) ........ 22, 23

*United States v. Castillo*,
70 F.4th 894 (5th Cir. 2023) ........ 31

*United States v. Cooks*,
589 F.3d 173 (5th Cir. 2009) ........ 50

*United States v. Cowden*,
882 F.3d 464 (4th Cir. 2018) ........ 34, 43

*United States v. Dunford*,
148 F.3d 385 (4th Cir. 1998)........................................................................ 35

*United States v. Flores-Montano*,
541 U.S. 149 (2004) ........................................................................... 29-30

*United States v. Gordon*,
754 F. App'x 171 (4th Cir. 2018) ............................................................ 44

*United States v. Grimes*,
702 F.3d 460 (8th Cir. 2012).........................................................................19

*United States v. Grimmond*,
137 F.3d 823 (4th Cir. 1998)........................................................................ 35

*United States v. Gutierrez,*
963 F.3d 320 (4th Cir. 2020) ................................................................ 49-50

*United States v. Hart*,
635 F.3d 850 (6th Cir. 2011)......................................................................... 26

*United States v. Hill*,
776 F.3d 243 (4th Cir. 2015)....................................................................32-33

*United States v. Holbrook*,
368 F.3d 415 (4th Cir. 2004)........................................................................ 24

*United States v. Hollow Horn Bear*,
144 F.4th 1105 (8th Cir. 2025)...............................................................23-24

*United States v. Hoover*,
95 F.4th 763 (4th Cir. 2024).......................................................................... 34

*United States v. Huazhi Han*,
105 F.4th 986 (7th Cir. 2024).........................................................................41

*United States v. Ickes*,
393 F.3d 501 (4th Cir. 2005) ................................................................ 32, 33

*United States v. Isabella*,
918 F.3d 816 (10th Cir. 2019) .............................................................. 27

*United States v. Johnson*,
617 F.3d 286 (4th Cir. 2010)................................................................. 39

*United States v. Kolsuz*,
890 F.3d 133 (4th Cir. 2018) ....................................................... 32, 33

*United States v. Lamborn*,
159 F.4th 230 (4th Cir. 2025) ............................................................ 18

*United States v. Lentz*,
524 F.3d 501 (4th Cir. 2008).................................................................40

*United States v. Lynch*,
726 F.3d 346 (2d Cir. 2013)................................................................ 19

*United States v. Malloy*,
568 F.3d 166 (4th Cir. 2009).................................................................48

*United States v. Martin*,
523 F.3d 281 (4th Cir. 2008)........................................................ 24, 25

*United States v. Masters*,
622 F.2d 83 (4th Cir. 1980)...................................................................39

*United States v. McBride*,
676 F.3d 385 (4th Cir. 2012) ...............................................................39

*United States v. McKeon*,
738 F.2d 26 (2d Cir. 1984)........................................................... 46, 47

*United States v. Mendez*,
103 F.4th 1303 (7th Cir. 2024) ..............................................................31

*United States v. Montes-Pineda*,
445 F.3d 375 (4th Cir. 2006) .................................................. 50

*United States v. Montoya de Hernandez*,
473 U.S. 531 (1985) .................................................. 30

*United States v. Palombo*,
31 F.3d 1456 (9th Cir. 1994) .................................................. 20

*United States v. Penniegraft*,
641 F.3d 566 (4th Cir. 2011) .................................................. 38

*United States v. Perez*,
661 F.3d 189 (4th Cir. 2011) .................................................. 52

*United States v. Piette*,
45 F.4th 1142 (10th Cir. 2022) .................................................. 42

*United States v. Pratt*,
915 F.3d 266 (4th Cir. 2019) .................................................. 29

*United States v. Provance*,
944 F.3d 213 (4th Cir. 2019) .................................................. 49

*United States v. Quinn*,
359 F.3d 666 (4th Cir. 2004) .................................................. 53

*United States v. Sanchez*,
30 F.4th 1063 (11th Cir. 2022) .................................................. 26

*United States v. Shrader*,
675 F.3d 300 (4th Cir. 2012) .................................................. 24

*United States v. Sun*,
278 F.3d 302 (4th Cir. 2002) .................................................. 52

*United States v. Thornton*,
554 F.3d 443 (4th Cir. 2009) .......... 49

*United States v. Touset*,
890 F.3d 1227 (11th Cir. 2018) .......... 32

*United States v. Udeozor*,
515 F.3d 260 (4th Cir. 2008) .......... 40

*United States v. Velasquez*,
52 F.4th 133 (4th Cir. 2022) .......... 18

*United States v. Watford*,
894 F.2d 665 (4th Cir. 1990) .......... 38

*United States v. Watson*,
703 F.3d 684 (4th Cir. 2013) .......... 29

*United States v. Wilson*,
624 F.3d 640 (4th Cir. 2010) .......... 43

**Statutes**

18 U.S.C. § 2246(3) .......... 50

18 U.S.C. § 2251(a) .......... *passim*

18 U.S.C. § 2260A .......... 1, 16

18 U.S.C. § 2422(b) .......... *passim*

18 U.S.C. § 2427 .......... 28

18 U.S.C. § 3161(c)(1) .......... 19, 21

18 U.S.C. § 3161(c)(2) .......... 21

18 U.S.C. § 3231 .......... 1

18 U.S.C. § 3553(a) .......... 16, 18, 50, 56

18 U.S.C. § 3742 .......... 1

28 U.S.C. § 1291 .......... 1

**Rules**

Fed. R. Evid. 801(d)(2)(D) .......... 3, 14, 18, 44, 46

Fed. R. of Evid. 403 .......... *passim*

Fed. R. of Evid. 404(b) .......... *passim*

**Other**

U.S.S.G. § 2G2.1 .......... 15, 50, 51

U.S.S.G. § 3C1.1 .......... 15, 51

U.S.S.G. § 4B1.5(b) .......... 15, 53, 54

## STATEMENT OF JURISDICTION

On February 7, 2023, a federal grand jury returned a three-count second superseding indictment charging Alex Kai Tick Chin with production of child pornography, in violation of 18 U.S.C. § 2251(a), enticement of a minor, in violation of 18 U.S.C. § 2422(b), and committing a felony offense involving a minor while required to register as a sex offender, in violation of 18 U.S.C. § 2260A. JA53-56.[1] The district court had original jurisdiction pursuant to 18 U.S.C. § 3231, as the charges constituted offenses against the United States. Chin was convicted on all charges following a jury trial. JA966-968. A Judgment and Commitment Order was entered on April 29, 2025. JA1014-1022. Chin timely filed a notice of appeal on May 8, 2025. JA1023. This Court has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## ISSUES PRESENTED

**I. Speedy Trial Act.** Approximately 5 months passed between Chin's arrest in California and his arrival and prompt arraignment in the Southern District of West Virginia. Chin filed a motion to dismiss based upon a violation of his Speedy Trial Act rights. The district court

[1] References to the Joint Appendix shall be designated as "JA__."

found no violation of Chin's rights because the 70-day trial deadline did not begin until his arraignment in the charging district. Did the district court err in denying Chin's motion?

II. **Motion to Dismiss Count for Multiplicity.** Chin moved to dismiss the production of child pornography charge, arguing that the indictment was multiplicitous because that charge was a lesser included offense of the enticing a minor to engage in criminal sexual conduct charge. Did the district court err in denying Chin's motion?

III. **Motion to Suppress Border Search.** Chin moved to suppress evidence derived from the basic manual search of his cell phone at the border when he crossed into the United States from Mexico. As this type of routine search requires no reasonable suspicion, the district court denied the motion. Was this error?

IV. **Motion to Exclude Rule 404(b) Evidence.** Chin filed a motion to exclude evidence under Federal Rule of Evidence 404(b), including evidence regarding communications and interactions between himself and the victim outside the timeframe charged in the indictment and testimony from an underage friend of the victim regarding similar communications with Chin. The district court found the evidence was

intrinsic or otherwise admissible under Rule 404(b) and denied the motion. Did the district court abuse its discretion?

V. **Impeachment by Factual Statement through Counsel.** The district court permitted the United States to impeach Chin's testimony with a portion of the factual statement contained within his motion to suppress, finding such statements were admissible as agent statements under Fed. R. Evid. 801(d)(2)(D). Was this an abuse of discretion, and if so, was any error harmless?

VI. **Reasonableness of Sentence.** The district court overruled Chin's objections to three sentencing enhancements related to sexual contact based upon images of child pornography depicting the victim masturbating, obstruction due to perjury at trial, and a pattern of prohibited sexual conduct. His advisory Guideline range was calculated to be life, but the district court varied downward to 37 years of imprisonment, only two years longer than the mandatory minimum sentence. Was this below-Guideline sentence procedurally and substantively reasonable?

## STATEMENT OF THE CASE

*A. Offense Conduct and Indictment*

In fall 2020, Chin, a registered sex offender who lived in California, began communicating via Snapchat with two underage girls who lived in West Virginia: A.C., also referred to as Minor Female 1, and A.M., also referred to as Minor Female 2. JA381-383, JA450-452, JA546-547, JA710-712.[2] At the time, Minor Female 1 was 16 years old and Minor Female 2 was 12 years old. JA369, JA382, JA448. Minor Female 1 began talking to Chin after she was introduced to him through Minor Female 2. JA381-382. Minor Female 2 testified at trial that she met Chin through an online videochat[3] she did while at Minor Female 1's house. JA451-452.

During his Snapchat communications, Chin told both girls to send him nude photos of themselves on Snapchat, including photos of them touching themselves sexually. JA394, JA401, JA457-458, JA555. If the girls refused to send pictures or upset him in other ways, he would threaten to hurt himself

---

[2] The second superseding indictment only contained charges related to Minor Female 1; any references herein to "the victim" refer to Minor Female 1.

[3] The videochat service matched users at random for videochats.

or commit suicide. JA386, JA394-395, JA419, JA457-460, JA475-476. Chin also sent both girls pictures of his penis. JA460-461, JA558-559.

Unbeknownst to Minor Female 1, Chin was surreptitiously making screen recordings of some of their Snapchat conversations and saving them to his phone. JA402-403. These screen recordings included portions of their conversations as well as images of Minor Female 1. JA542-543. Chin's messages to Minor Female 1 included him asking, "Can Daddy see your tight little asshole?" and telling her "Daddy wants to see you finger your ass. Be a good little slut and show Daddy." JA550, JA555. In another conversation, after Chin sent the victim an image, the victim responded, "you're so big." JA558-559. Chin replied to her by saying "it will fit real nice in your little pussy" followed by a winky emoji. JA559. In another message from March 2021, Chin told Minor Female 1, "Last year, I also tried to commit suicide, only stopped by [Minor Female 2]." JA564. In September 2020, Chin had sent several messages to Minor Female 2 telling her to "go talk to your boyfriend" and that he would start drinking with the hope of dying. JA565.

Chin also saved hundreds of images of Minor Female 1 on his phone. JA578, JA1032. These images included both non-explicit images of the victim and sexually explicit images. JA578. In addition to images of Minor

Female 1, Chin saved dozens of images of Minor Female 2 and at least one photo of both girls together. JA392, JA456, JA573-576, JA579.

Chin continued to communicate with the two minors until March 2022. At that time, he told both girls he planned to drive to West Virginia and wanted to meet with them. JA406-409, JA462. In mid-March 2022, Chin arrived in West Virginia in a van that he had previously described to the girls. JA462-465, JA602-603. Minor Female 1 saw Chin in a store, and Minor Female 2 saw him drive in his van by her home in the Huntington, West Virginia, area. JA411, JA465. Neither girl interacted with Chin in person while he was in West Virginia, and Minor Female 2 intentionally gave him false directions to a meeting location to avoid him. JA409, JA464-466, JA604-607.

After leaving West Virginia, on March 21, 2022, Chin traveled to El Paso, Texas, where he walked across the border into Mexico for a brief time. JA82. When he returned to the United States, he was flagged by United States Customs and Border Protection ("CBP") for secondary screening after his initial screening indicated that he was a registered sex offender. JA82-83. As part of the secondary screening process, officers with CBP took two cell phones from Chin and requested his passwords to open the phones.

JA83. The two phones were then manually reviewed. JA83-84. One phone, a Samsung Galaxy 9 cell phone, was observed to have an apparent minor female on the lock screen.[4] JA83-84. During the manual search, officers located what appeared to be nude images of a suspected minor. JA84. At that time, Homeland Security Investigations ("HSI") was contacted. JA85. HSI special agents seized the cell phones and later applied for a search warrant prior to forensically examining the Samsung that was observed containing suspected child pornography. JA85-87.

Based upon information located on Chin's phone during the manual search, law enforcement identified Minor Female 1 as residing in West Virginia. JA86. Following an investigation that included reviewing the contents of Chin's phone pursuant to the search warrant and interviewing Minor Female 1, her sister, Minor Female 2, and others, an indictment was returned by a federal grand jury in the Southern District of West Virginia on April 26, 2022, charging Chin with one count of production of child pornography, in violation of 18 U.S.C. § 2251(a). JA4, JA18.

---

[4] It was later determined that the female depicted on the lock screen was Minor Female 1. JA580-583.

*B. Arrest and Arraignment*

On June 13, 2022, Chin was arrested in San Francisco, California. JA41. On June 17, 2022, a magistrate judge ordered Chin released on bond, although the release order was stayed pending an appeal by the United States to the district court. JA41-42. The issue of detention was litigated before the district court in the Southern District of West Virginia; in connection with the detention issue, Chin's attorney entered an appearance on June 22, 2022, including a response by Chin filed through counsel on July 11, 2022. JA42. On July 14, 2022, the district court revoked the bond order and ordered Chin detained and transferred to West Virginia for further proceedings. JA42.

On August 9, 2022, a grand jury returned a superseding indictment against Chin, which added a second felony offense for committing a felony involving a minor while a registered sex offender. JA42. After a status conference in California on August 31, 2022, the magistrate judge entered a Commitment to Another District Order directing the United States Marshals Service ("USMS") to transport Chin to West Virginia. JA42. At a second status conference on September 13, 2022, the USMS advised that the next available airlift for Chin would not be until October 2022. JA42-43. Chin's transport began on October 7, 2022, and he arrived in West Virginia on

November 7, 2022. JA43. He was arraigned on the superseding indictment two days later. JA43.

Just prior to his arrival in West Virginia, Chin filed a motion to dismiss his indictment for a Speedy Trial Act violation, arguing that his trial should have commenced within 70 days of the August 9, 2022, superseding indictment because it followed his counsel's appearance in the case. JA18-24. The district court denied Chin's motion after holding that his Speedy Trial Act trial clock did not begin to run until after his arraignment in the charging district on November 9, 2022. JA44-47.[5]

*C. Pretrial Motions*

A second superseding indictment was returned against Chin on February 7, 2023, which added a violation of 18 U.S.C. § 2422(b) for enticement of a minor to engage in criminal sexual activity. JA53-56. Following the return of this indictment, Chin filed multiple pretrial motions. Pertinent to this appeal, Chin filed a motion to dismiss Count One of the second superseding indictment, which charged a violation of 18 U.S.C. § 2251, arguing that it was multiplicitous with the charge of enticement of a

---

[5] The district court also found that Chin's Sixth Amendment speedy trial rights were not violated, but that issue has not been raised on appeal.

minor. JA123-126. Following the other circuits that have analyzed the question of multiplicity with regards to § 2251 and § 2422(b), the district court denied the motion because each statute requires proof of a fact different than the other. JA239-240. The district court noted that the question could be revisited if Chin was ultimately convicted of both counts. JA240.

Chin also filed a motion to suppress all evidence derived from the manual search of his phone by officers at the border. JA81-106. As part of his motion, Chin set forth the "known facts of the matters leading up to the March 21, 2022, seizure of defendant's Samsung Galaxy 9 smartphone." JA93. These facts included the timeline of events at the border and a conversation between Chin and a CBP officer during which he said the girl on his lock screen was a 13-year-old friend. JA82-87. The district court denied Chin's motion because a basic manual cell phone search at the border does not require reasonable suspicion. JA231.

Finally, Chin filed a motion to exclude several forms of evidence under Federal Rule of Evidence 404(b): 1) communications and relevant testimony regarding communications between Chin and the victim in the charged offenses that occurred after the time period charged in the indictment;

2) evidence of Chin's cross-country road trip to West Virginia that occurred after the charged time frame; and 3) testimony and evidence related to Minor Female 2, who was the victim's friend and also communicated with Chin in a similar manner during the relevant time frame.[6] JA107-116. The district court denied Chin's motion as to each of these forms of evidence, finding that the evidence was "either intrinsic to the charged conduct or admissible for a permitted purpose under Rule 404(b)." JA234-235. In particular, to the extent that the evidence was not intrinsic, the district court found that the evidence was properly admissible to prove the relationship between the Minor Female 1 and Chin, his intent to entice and persuade her to engage in criminal sexual activity, and his identity as the person communicating with the minors. JA235.

*D. Trial*

Chin proceeded to a jury trial on August 20, 2024. JA346. The government presented testimony from both Minor Female 1 and Minor Female 2, each of whom described their communications with Chin and why they felt compelled to send him nude and sexually explicit images. JA369-

[6] The district court's ruling related to both Minor Female 2 and Minor Female 3 (Minor Female 1's younger sister), but Minor Female 3 did not ultimately testify at trial. JA109.

481. HSI Computer Forensic Analyst ("CFA") Leland Pickering also testified about evidence he located on Chin's phone. JA522-704. Through CFA Pickering, the United States introduced dozens of exhibits, which included Snapchat conversations between Chin and the two minors and sexually explicit images of Minor Female 1 that Chin had secretly saved to his phone. JA529-635. Exhibits from Chin's phone also provided evidence related to his travel to West Virginia in March 2022, including conversations with the minors about his traveling to see them, a video recorded from his phone while he was driving in Huntington, and a screenshot from Snapchat showing that he was located at a store 22 minutes after Minor Female 1 was last seen there. JA595-612. An inmate previously housed with Chin testified that Chin bragged that could manipulate girls to send him nude images by threatening to hurt himself. JA499-500. Finally, the United States introduced records related to Chin's prior conviction for possession of child pornography in California and his status as a registered sex offender. JA705-714.

Chin testified in his own defense during the trial. JA765-910. During his testimony, Chin denied having asked for pictures from Minor Female 1 and claimed that she was the sexual aggressor who refused to stop harassing

him by sending him sexually explicit photos despite his repeated attempts to make her stop. JA776, JA786-787. Chin testified that he saved the supposedly unwanted sexually explicit images to hold over her head if he was angry at her later. JA805, JA815. Chin testified that anything sexual he said to Minor Female 1 was entirely at her direction and that she would tell him exactly what to say to her. JA787-788, JA810-813. He claimed that he blocked Minor Female 1 to stop the alleged sexual harassment but admitted that he had kept her picture as his phone lock screen over the course of the year preceding the seizure of his phone. JA805-809. Chin also denied ever sending any nude images of himself to Minor Female 1. JA816. He claimed that her comment "you're so big" in one of the conversations admitted into evidence was in response to a picture he sent her of a banana; he had no explanation as to why he then suggested that the banana "will fit real nice in your little pussy." JA558-559, JA816. Chin admitted to coming to West Virginia and attempting to see both minors but testified that he was only in the state to drop off a sweater to Minor Female 2 as a thank you gift for helping him avoid suicide. JA833-836.

Chin also stated that be believed Minor Female 1 to have been an adult at the time they started communicating, although he knew that her friend, Minor Female 2, was approximately 12 years old. JA821-823. During cross-examination, the United States asked Chin if he recalled talking to the officers at the border about the girl depicted on his lock screen. JA823-824. He confirmed that he told them she was a friend he met online, but he denied saying that she was 13 years old. JA824-825. The United States then impeached him using the portion of the recitation of "known facts" from his motion to suppress evidence in which he stated that he told the officer that the girl on his lock screen was 13 years old. JA84-85, JA828. The district court allowed the use of the statement because, as the United States had set forth in its trial brief, it was a statement of a party opponent through his counsel under Fed. R. Evid. 801(d)(2)(D).[7] JA825-828. Chin continued to deny having made a statement that Minor Female 1 was 13 years old and testified that he had to fire that prior attorney. JA829.

Chin was convicted on all three counts. JA965-968.

[7] *See* United States Trial Brief, S.D.W.V. Case No. 3:22-00087, ECF No. 135 at 5-9.

*E. Sentencing*

Following trial, a presentence investigation report ("PSR") was prepared by the United States Probation Office. JA1025-1063. A sentencing hearing was held on April 28, 2025. JA977-1013. Chin objected to three Guideline enhancements. JA979-987. The district court overruled the Chin's objection regarding to an enhancement under U.S.S.G. § 2G2.1(b)(2)(A) after finding that the uncontested facts in the PSR indicated that the images of Minor Female 1 produced at Chin's direction depicted masturbation, which satisfied the definition of sexual contact. JA983. The district court also applied the obstruction enhancement under U.S.S.G. § 3C1.1 after agreeing with the government's description of Chin's testimony about being the victim of Minor Female 1's sexual aggression as "an affirmative, willful lie that he told to the jury, and it was material because it went directly to an element of the offense" and finding that "all of these lies permeated [Chin's] testimony." JA984-985. Finally, the district court overruled Chin's objection to the pattern of prohibited sexual conduct enhancement under § 4B1.5(b) after finding that Chin "engaged in numerous acts that resulted in numerous

instances where one or the other of these victims provided him with pictures that amount to child pornography." JA987.

Chin's adjusted offense level was then calculated to be 43, with a criminal history category of II, which resulted in an advisory Guideline range of life in prison for Counts One and Two. JA991. The conviction on Count Three for a violation of 18 U.S.C. § 2260A carried a 10-year mandatory consecutive sentence, and Chin's conviction under § 2251 carried a 25-year mandatory minimum penalty due to his prior child pornography conviction. JA989, JA991. After hearing arguments from the parties related to the 18 U.S.C. § 3553(a) factors, the district court concluded that a downward variance was warranted and sentenced Chin to 27 years on each of Counts One and Two, to be served concurrent to one another, followed by 10 years on Count Three to be served consecutive, for a total term of 37 years of incarceration, with a term of 20 years of supervised release to follow. JA1002-1005. The judgment order was entered on April 29, 2025, and this appeal timely followed. JA1014-1024.

## SUMMARY OF ARGUMENT

The district court properly denied two different motions to dismiss. The district court did not err by denying Chin's motion to dismiss for a Speedy Trial Act violation because per the statute the 70-day period for trial was not triggered until he made his first in-person appearance in the Southern District of West Virginia following his arrest on the indictment in California. The district court also did not err in denying Chin's motion to dismiss a count of the indictment for multiplicity because under the *Blockburger* test the offenses charged in the indictment each had an element different from the other.

The district court also correctly denied two motions to suppress or exclude evidence. Chin's motion to suppress evidence stemming from a basic manual search of his cell phone at the Mexican border was properly denied because such searches do not require reasonable suspicion. The district court also did not abuse its discretion by denying Chin's motion to exclude evidence under Federal Rule of Evidence 404(b) because the evidence was both intrinsic and, in the alternative, admissible for proper purposes, including intent, motive, modus operandi, and identity.

The district court did not abuse its discretion when it permitted the United States to impeach Chin during trial when he testified contrary to the recitation of "known facts" contained in his motion to suppress the border

search of his cell phone. Such factual assertions in the motion constituted statements by Chin through his counsel and were admissible under Fed. R. Evid. 801(d)(2)(D).

Finally, the district court's sentence was both procedurally and substantively reasonable. The district court correctly denied Chin's three objections to the Guideline calculation, and the presumptively reasonable below-Guideline sentence was supported by a proper balancing of the 18 U.S.C. § 3553(a) factors.

## ARGUMENT

### I. The district court did not err by denying Chin's motion to dismiss the superseding indictment for an alleged violation of the Speedy Trial Act.

*A. Standard of Review*

This Court "review[s] de novo the district court's interpretation of the Speedy Trial Act and whether the district court properly excluded a given period under the Act." *United States v. Velasquez*, 52 F.4th 133, 138 (4th Cir. 2022) (cleaned up). The district court's factual findings are reviewed for clear error. *United States v. Lamborn*, 159 F.4th 230, 245 (4th Cir. 2025).

*B. The district court properly concluded that the Speedy Trial Act's seventy-day period for trial did not begin to run until Chin appeared in person in the charging district for his arraignment.*

Chin's rights under the Speedy Trial Act were not violated and his

motion to dismiss was properly denied. In relevant part, the Speedy Trial Act states:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an . . . indictment . . . shall commence within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

When a defendant is arrested on an indictment in a district outside the charging district, there is typically a delay between the arrest and the arraignment to allow for the defendant to be transported. While this Court has not yet directly addressed when the Speedy Trial Act begins to run under such circumstances, multiple other circuits have found that it is the initial appearance of the defendant in the charging district (typically at an arraignment) that triggers the start of the Speedy Trial Act clock. For instance, in *United States v. Lynch*, the Second Circuit found that the 70-day timeline for trial did not begin until the defendant arrived and was arraigned in the charging district. 726 F.3d 346, 352-53 (2d Cir. 2013); s*ee also United States v. Grimes*, 702 F.3d 460, 466-67 (8th Cir. 2012) ("[T]he STA time period does not begin to accrue until a defendant appears in the particular

district court in which the charges against him are pending."); *United States v. Palombo*, 31 F.3d 1456, 1462 (9th Cir. 1994) (concluding that when "the indictment predates the initial appearance[,]" the 70-day clock does not begin to run until the defendant is arraigned in the charging district).

Triggering the start of the Speedy Trial Act clock upon a defendant's arrival and appearance in the charging district also makes logical sense. Until a defendant has arrived in the charging district, it is impossible for a trial to take place. Applying a time limit for trial prior to the time when such a trial could even occur would thwart the ends of justice. Moreover, at least in the Southern District of West Virginia, a trial date is not set on the docket until the arraignment. It would therefore, as noted by the district court, be "virtually impossible to conduct proceedings" and "neither side would be able to move to continue any proceedings, as no proceedings would have been scheduled." JA46. Given this impracticality, starting the trial clock prior to a defendant being arraigned in the charging district and a trial being scheduled would eliminate the option of a continuance under 18 U.S.C. § 3161(h)(7)(A), although allowing time for a defendant to be transported to the charging district clearly serves the ends of justice. To have the 70-day clock for trial expire before a trial was even placed on the district court's

docket is certainly not consistent with the intent of Congress when it passed the Speedy Trial Act and would do an unintended disservice to the administration of justice.

In this case, no Speedy Trial Act violation occurred. Chin was indicted in West Virginia in April 2022 and arrested in California in June 2022. Given that Chin made no pre-indictment appearance, the 70-day period for trial did not begin to run until his appearance before a judicial officer in West Virginia on November 9, 2022. Contrary to Chin's argument, the appearance of his counsel via filings regarding detention issues did not constitute an appearance *by Chin*. Under canons of statutory construction, it is presumed that "Congress acts intentionally when it omits language included elsewhere." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 392 (2015). The proximity between the use of certain language and the omission of such language is a particularly compelling basis to conclude the language was intentionally left out.

While § 3161(c)(1) refers to "the date the defendant appeared before a judicial officer of the court," the very next subsection refers to "the date on which the defendant first appears *through counsel*." 18 U.S.C. § 3161(c)(2) (emphasis added). Had Congress intended for a defendant's appearance

under § 3161(c)(1) to include an appearance by counsel, it could easily have mirrored the "through counsel" language of the next subsection and said so explicitly. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (holding that the omission of a phrase from one subsection that was explicitly used in the following subsection was an intentional Congressional omission). The omission of the language used almost immediately thereafter demonstrates that it is the appearance of Chin himself, not merely his counsel through filings, that triggers the application of the Speedy Trial Act.

The insufficiency of an appearance through counsel also undermines Chin's argument that the return of the superseding indictment following his attorney's appearance on the detention motion was the triggering event for the Speedy Trial Act. Under either the initial or superseding indictment, Chin must make an in-person appearance in the charging district before the 70-day period for trial under the Speedy Trial Act begins to run. The same practical and logistical concerns also apply equally to a superseding indictment returned between the arrest and arraignment on the initial indictment.

Chin's reliance upon *United States v. Carrasquillo*, 667 F.2d 382 (3d Cir. 1981), is misplaced. In *Carrasquillo*, the Third Circuit explicitly stated

that when a case is initiated by an indictment, rather than a complaint, "the postindictment arraignment will be the relevant 'last occurring date'" for purposes of § 3161(c)(1). 667 F.2d at 384. *Carrasquillo* involved a defendant who had made a pre-indictment court appearance *in the charging district* based on a complaint and then trial commenced more than 70 days after the subsequent return of an indictment. This is readily distinguished from this case, where Chin was arrested in another district on an indictment and therefore never made a pre-indictment appearance in any court, much less in the charging district. *Carrasquillo*'s only relevance to this case is to support the conclusion that Chin's 70-day clock began to run on the date of his arraignment.

The district court did not err by denying Chin's motion to dismiss the indictment for a violation of his Speedy Trial Act rights.

## II. The district court did not err in denying Chin's motion to dismiss Count One of the second superseding indictment as multiplicitous.

### *A. Standard of Review*

This Court reviews de novo a district court's denial of a motion to dismiss an indictment for multiplicity. *United States v. Hollow Horn Bear*,

144 F.4th 1105, 1109 (8th Cir. 2025); *United States v. Holbrook*, 368 F.3d 415, 424 (4th Cir. 2004), vacated on other grounds, 545 U.S. 1125 (2005).

*B. The district court properly denied Chin's motion to dismiss Count One of the second superseding indictment because the indictment was not multiplicitous.*

The district court properly denied Chin's motion to dismiss Count One of the second superseding indictment because there was no violation of Chin's constitutional right against double jeopardy. "The constitutional guaranty established by 'the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.'" *United States v. Martin*, 523 F.3d 281, 290 (4th Cir. 2008) (quoting *United States v. Halper*, 490 U.S. 435, 440 (1989)). "In the multiple punishments context, the interest protected by the Double Jeopardy Clause is limited to ensuring that the total punishment [does] not exceed that authorized by the legislature." *Id.* (cleaned up). "Thus, the guarantee against multiple punishments serves simply to ensure that the defendant's sentence is authorized by Congress." *Id.*; *see also United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012) ("The rule against multiplicity is rooted in the Double Jeopardy Clause of the Fifth Amendment, which

serves . . . the familiar function of prohibiting . . . the imposition of cumulative punishments for the same offense in a single criminal trial." (internal quotations omitted)).

The test used to determine whether two counts charge the same offense is "whether each provision requires proof of a fact which the other does not." *Rutledge v. United States*, 517 U.S. 292, 297 (1966) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Under the *Blockburger* test, "whether two offenses are the same depends on the elements of the crimes and not the similarity of the underlying facts." *Martin*, 523 F.3d at 292. "It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Albernaz v. United States*, 450 U.S. 333, 344 n.3 (1981).

Accordingly, whether Count One (a violation of 18 U.S.C. § 2251(a), the production of child pornography) and Count Two (a violation of 18 U.S.C. § 2422(b), enticement of a minor to engage in illegal sexual activity) are multiplicitous depends on a comparison of their elements. Several circuits (the Sixth, Tenth, and Eleventh) have ruled directly on the interplay between enticing a minor to produce child pornography and the production of child pornography. All three have concluded that production of child pornography

is not a lesser included offense of enticement and denied claims of multiplicity because each offense has an element not contained in the other.

The Eleventh Circuit has addressed the issue most recently. In *United States v. Sanchez*, 30 F.4th 1063 (11th Cir. 2022), the defendant moved to dismiss for multiplicity where he was sentenced for violating both § 2251(a) and § 2422(b) based on enticing minors to produce child pornography. The Eleventh Circuit considered whether the two statutes have the same elements and succinctly concluded that "they don't." *Id.* at 1077. Importantly, to assess the Double Jeopardy claim, the focus is on "the proof necessary to establish the statutory elements of each offense, not the actual evidence presented at trial." *Id.* The Sixth Circuit reached a similar conclusion, holding that under the *Blockburger* test each statute had an element different from the other: § 2422(b) required the government to prove a defendant "persuad[ed] a minor to engage in 'sexual activity for which any person can be charged with a criminal offense,'" and § 2251 required proof that the defendant "persuade[d] a minor to engage in sexually explicit conduct 'for the purpose of producing a visual depiction of such conduct.'" *United States v. Hart*, 635 F.3d 850, 858 (6th Cir. 2011).

One offense is a lesser included offense of another if *some* of the elements of one offense necessarily meet *all* the elements of the other offense. In rejecting the argument that § 2251(a) is a lesser included offense of § 2422(b) when they arise from the same conduct, the Tenth Circuit found that "a key element of the two statutes is not only different, it is broader in the statute that [defendant] needs to be a lesser included offense for his double jeopardy argument to work." *United States v. Isabella*, 918 F.3d 816, 848 (10th Cir. 2019). The analysis in *Isabella* focused on a comparison of the first elements of each offense: the first element of § 2422(b) requires that a defendant "knowingly *persuades, induces, entices, or coerces* any individual who has not attained the age of 18 years," and the first element of § 2251(a) requires that the defendant "*employs, uses, persuades, induces, entices, or coerces*." *Id.* (emphasis in original). As the first element of § 2251, which Chin argues is a lesser included of § 2422(b), is actually broader than the corresponding element of § 2422(b), it cannot be a lesser included offense. *Id.* Accordingly, a jury could convict a defendant for "employing" or "using" a minor to violate § 2251(a) and "persuading" the minor to violate § 2422(b) from the same course of conduct. *Id.* at 848-49.

That there are certain *factual* scenarios where the production of child pornography serves as the basis of both a § 2251(a) conviction and as the particular type of "sexual activity for which any person could be charged with a crime" does not alter the *Blockburger* analysis, which focuses upon the *elements* of the offenses. Chin's attempt to turn the Double Jeopardy multiplicity analysis into a factual assessment is contrary to law. That the indictment cites to 18 U.S.C. § 2427[8] to explicitly identify one particular statutory definition of "sexual activity for which any person could be charged with a crime" does not alter the essential elements of § 2422(b) for a *Blockburger* assessment; per both the statute and the jury instructions given at trial, *any* illegal sexual activity, not only production of child pornography, could permit a conviction on Count Two. JA354-355, JA921. The indictment survives a Double Jeopardy multiplicity challenge because § 2422(b) and § 2251(a) constitute two separate and distinct crimes under *Blockburger*, even if both offenses arose out of the same conduct by Chin.

---

[8] As 18 U.S.C. § 2427, which became law in 1998, merely supplies a clarification as to what can be included as the sexual activity that can violate § 2422(b), it has been included, whether implicitly or explicitly, in every case charging a violation of § 2422(b) for over 25 years.

Chin's motion to dismiss Count One of the second superseding indictment was properly denied.

## III. As basic manual cell phone searches at the border do not require reasonable suspicion, the district court did not err in denying Chin's motion to suppress.

### *A. Standard of Review*

This Court reviews the factual findings regarding a suppression motion for clear error and the legal conclusions de novo. *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019). When a motion to suppress is denied by the district court, the facts are viewed in the light most favorable to the government. *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013).

### *B. Chin's motion to suppress the basic search of his cell phone at the border was properly denied because such searches do not require any individualized suspicion.*

The Fourth Amendment generally requires that law enforcement searches be accompanied by a warrant based on probable cause. *Arizona v. Gant,* 556 U.S. 332, 338 (2009). But there are exceptions, and one such exception typically covers national borders. "[S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United*

*States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004) (citing *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). At a border, the government may conduct "routine" searches and seizures of property without a warrant or even individualized suspicion. *Almeida-Sanchez v. United States*, 413 U.S. 266, 272-73 (1973); *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985).

Property subject to search at the border includes electronic devices, such as cell phones. To be sure, modern cell phones contain a significant amount of data, much of which may be deemed personal or private. However, at the border, the "Government's interest in preventing the entry of unwanted persons and effects is at its zenith," *Flores-Montano*, 541 U.S. at 152, and the "Fourth Amendment balance of interests leans heavily to the government," *Montoya de Hernandez*, 473 U.S. at 544. As set forth by the First Circuit in *Alasaad v. Mayorkas*, "basic border searches of electronic devices do not involve an intrusive search of a *person*" and are limited in scope because the search requires "an officer to manually traverse the contents of the traveler's electronic device, limiting in practice the quantity of information available." 988 F.3d 8, 18 (1st Cir. 2021) (emphasis in original). The manual search of a phone is therefore appropriately deemed a

"routine" search at the border that is more akin to looking through a person's luggage than undergoing an invasive search of their body.

In the context of a different exception to the Fourth Amendment, a search incident to arrest, the Supreme Court has found that law enforcement must obtain a warrant to search the digital data contained on a seized cell phone unless another exception applies, such as exigent circumstances. *Riley v. California*, 573 U.S. 373, 401-02 (2014). However, every circuit court to directly consider the constitutionality of a manual border search of an electronic device after *Riley* has declined to apply its ruling to such "routine" searches at the border. *See United States v. Mendez*, 103 F.4th 1303, 1310 (7th Cir. 2024) ("We therefore agree with the consensus among circuits that brief, manual searches of a traveler's electronic device are 'routine' border searches requiring no individualized suspicion."); *United States v. Castillo*, 70 F.4th 894, 897-98 (5th Cir. 2023) (joining other circuits that "have uniformly held that *Riley* does not require either a warrant or reasonable suspicion" for manual cell phone searches at the border); *Alasaad*, 988 F.3d at 19 ("We . . . agree with the holdings of the Ninth and Eleventh circuits that basic border searches [of electronic devices] are routine searches and need not be supported by reasonable suspicion.");

*United States v. Cano*, 934 F.3d 1002, 1016 (9th Cir. 2019) (holding manual border searches of cell phones do not require individualized suspicion); *United States v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2018) (holding that no individualized suspicion is required for either a manual or forensic search of a cell phone at the border).

Chin urges this Court to rule contrary to every circuit to address the issue and find that *Riley*'s holding in the search incident to arrest context requires reasonable suspicion to do a basic, manual search of a cell phone at the border. The Fourth Circuit has already found that *Riley* does not strictly apply to border searches and that even intrusive, off-site forensic searches of a cell phone require only reasonable suspicion. *United States v. Kolsuz*, 890 F.3d 133, 144 (4th Cir. 2018). While *Kolsuz* addressed a forensic search, rather than a basic manual search, it recognized that the Fourth Circuit had, consistent with other circuits, previously held that a "manual, on-site inspection of computer contents that would be accessible to any user" was a routine border search that did not require any individualized suspicion. *Id.* at 147 n.5 (citing *United States v. Ickes*, 393 F.3d 501, 505-07 (4th Cir. 2005)). And while *Ickes* was decided before *Riley*, this Court's precedent "controls" unless "intervening case law from [this C]ourt sitting en banc or

the Supreme Court has explicitly or implicitly overruled it." *United States v. Hill*, 776 F.3d 243, 248 (4th Cir. 2015). As *Riley* does not strictly apply to border searches, the Supreme Court's ruling neither explicitly nor implicitly overrules this Court's prior holding in *Ickes* that manual searches of cell phones at the border do not require reasonable suspicion.

In this case, CBP officers fully complied with the Fourth Amendment. They permissibly conducted a "routine" on-site manual search of Chin's cell phones at the border and located nude images of a suspected minor. JA83-84. At that point they ceased the manual review and notified HSI. JA85. HSI conducted a further manual inspection and then sought a search warrant prior to forensically analyzing the phone. JA85-87. This conduct went beyond what the law requires, as *Kolsuz* would have allowed a warrantless forensic examination of the cell phone because the nude photos of a suspected minor supplied reasonable suspicion.

The district court correctly denied Chin's motion to suppress.

## IV. The district court did not abuse its discretion when it denied Chin's motion to exclude various evidence after finding the evidence was either intrinsic to the offenses charged or admissible pursuant to Federal Rule of Evidence 404(b).

### *A. Standard of Review*

This Court reviews the admission of evidence for abuse of discretion. *United States v. Cowden*, 882 F.3d 464, 471 (4th Cir. 2018). A district court has not abused its discretion in admitting evidence under Federal Rule of Evidence 404(b) unless that decision was "arbitrary and irrational." *United States v. Byers*, 649 F.3d 197, 206 (4th Cir. 2011).

### *B. The district court did not abuse its discretion in admitting evidence that was intrinsic to the offenses charged.*

Evidence is intrinsic to a charged offense when it is "inextricably intertwined with the evidence regarding the charged offense [because] it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted or serves to complete the story of the crime on trial." *United States v. Hoover*, 95 F.4th 763, 770 (4th Cir. 2024). Intrinsic evidence is not subject to Federal Rule of Evidence 404(b). *United States v. Bajoghli*, 785 F.3d 957, 965 (4th Cir. 2015).

Federal Rule of Evidence 403, which permits the exclusion of evidence if its probative value is substantially outweighed by the risk of unfair prejudice, is also of limited, if any, relevance to intrinsic evidence. Evidence that is "contemporaneous evidence relevant both to the context and to the crime is not the type of prejudice that Federal Rule of Evidence 403 addresses." *United States v. Dunford*, 148 F.3d 385, 396 (4th Cir. 1998) (internal citations omitted). Rule 403 prejudice relates to *unfair* prejudice, which "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt *on a ground different from proof specific to the offense charged*." *Bajoghli*, 785 F.3d at 966 (emphasis in original). When evidence directly establishes an element of the offense, there is "no question whether its probative value was substantially outweighed by its prejudicial effect." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998).

Chin challenges three types of evidence as improperly admitted by the district court: 1) communications and relevant testimony regarding communications between Chin and the victim in the charged offenses that occurred after the time period charged in the indictment; 2) evidence of Chin's cross-country road trip to West Virginia that occurred after the

charged time frame; and 3) testimony and evidence related to Minor Female 2, who was the victim's friend and also communicated with Chin in a similar manner during the relevant time frame.

The district court correctly found that messages sent between the victim and Chin after the charged time frame were "part of the ongoing story of the relationship between Defendant and Minor Female 1." JA235. The offense conduct involved Chin developing a relationship with Minor Female 1 via Snapchat in order to have her produce sexually explicit images for him. Their relationship and communication continued after the end of the charged time frame[9] and provided ongoing context for the crime. Given that the charge of enticement deals directly with Chin's efforts to influence the victim's mindset and persuade her to engage in illegal sexual activity, the ongoing nature of their relationship is a fundamental part of the "story of the crime on trial." Such intrinsic evidence is admissible without reference to Rule 404(b).

Similarly, the district court did not abuse its discretion in finding that testimony and evidence relative to Minor Female 2 was "intrinsic in that it is

---

[9] The time frame in the indictment ended "on or about February 14, 2021," which was the last date by which metadata from Chin's phone indicated he saved child pornography produced by the victim. JA628-632.

necessary to complete the story of the crime and show how Defendant met Minor Female 1." JA235. Minor Female 2 was a 12-year-old friend of the victim, Minor Female 1. Minor Female 1 testified that she first was introduced to Chin through Minor Female 2. JA381-382. Chin communicated with both minors on Snapchat during the same time frame and solicited nude images from both girls. JA381, JA394, JA453, JA457. Chin also attempted to manipulate both girls by threatening self-harm or suicide if they upset him or refused his requests. JA385-386, JA394, JA458-460, JA564-565. Chin would sometimes talk to one girl about his conversations with the other girl. JA384, JA564-565. Chin also had at least one picture of both girls together saved on his phone. JA456, JA575-576. In March 2022, Chin drove across the country to attempt meet up with both girls. JA409, JA462, JA464-466. As Minor Female 2's interactions with Chin were closely intertwined and similar in nature to his contemporaneous communications with Minor Female 1, her testimony and other related evidence was intrinsic and properly admitted without reference to Rule 404(b) to provide the jury with a complete narrative of the crime on trial.

Chin's cross-country road trip in March 2022 to West Virginia was also directly connected to the story of Chin's relationship with the victim. As his travel to West Virginia was a significant event in the ongoing interactions between Chin and his victim, testimony and evidence related to the trip was a "natural part of the witness's accounts of the circumstances surrounding the offenses" and therefore intrinsic evidence not subject to Rule 404(b) analysis.

*C. The district court did not abuse its discretion in admitting evidence under Rule 404(b).*

The district court did not abuse its discretion when it found that the challenged evidence was admissible for proper purposes under Rule 404(b). Rule 404(b) permits evidence of a defendant's prior crimes, wrongs, or other "bad acts" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident," but only if relevant, necessary, and reliable. *See generally United States v. Penniegraft*, 641 F.3d 566, 574 (4th Cir. 2011); *United States v. Basham*, 561 F.3d 302, 325-30 (4th Cir. 2009). The Fourth Circuit has held that "Rule 404(b) is an inclusive rule that allows admission of evidence of other acts relevant to an issue at trial except that which proves *only* criminal disposition." *United States v. Watford*, 894 F.2d 665, 671 (4th Cir. 1990) (emphasis added) (citing *United*

*States v. Masters*, 622 F.2d 83, 85 (4th Cir. 1980)). The Fourth Circuit has also noted that the list of circumstances set forth in the rule itself under which evidence may be found relevant for Rule 404(b) is "merely illustrative and not exclusionary." *Masters*, 622 F.2d at 86. The number of reasons that justify admission of evidence under the rule has been described as "infinite." *Id.*

Evidence of prior crimes or bad acts is admissible under Rule 404(b) when it satisfies the following requirements: 1) it is relevant to an issue, such as an element; 2) it is necessary, that is, it is probative of an essential claim or element; 3) it is reliable; and 4) it is not otherwise excluded under Federal Rule of Evidence 403. *United States v. Johnson*, 617 F.3d 286, 296-97 (4th Cir. 2010) (citing *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997)). "For evidence to be relevant, it must be 'sufficiently related to the charged offense.'" *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012). "[T]he more closely the prior act is related to the charged conduct – either in time, pattern, or state of mind – the more probative it is of the defendant's intent or knowledge in relation to the charged conduct." *Johnson*, 617 F.3d at 297.

Rule 403 allows a district court to exclude otherwise relevant evidence where the probative value of the evidence is "substantially outweighed" by a risk of unfair prejudice. Rule 403 is a rule of inclusion that generally favors admissibility. *United States v. Udeozor*, 515 F.3d 260, 264-65 (4th Cir. 2008). For this reason, "[w]here evidence is probative, 'the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly.'" *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)). Further, when probative evidence is "no more sensational or disturbing than" the offense on trial, it is generally not excluded under Rule 403. *Byers*, 649 F.3d at 210.

Each of the three categories of challenged evidence was properly admitted under Rule 404(b). To the extent such evidence was not intrinsic, it was relevant for permissible purposes other than criminal disposition. The communications and interactions between Chin and the victim following the end of the charged time frame were relevant to show his intent and motive to groom and persuade the victim to produce child pornography by making her believe they were in a relationship. Chin's trip to West Virginia in 2022 was relevant to proving identity — that *he* was the person on the other end of

the Snapchat messages who was talking to the victim during the charged time frame — and to again show his motivations and intentions regarding the victim. Finally, testimony and evidence related to Chin's interactions with Minor Female 2 provided evidence regarding Chin's intent and plan to groom both minors and his *modus operandi* of manipulating the girls to send him images through threats of self-harm.

The evidence was reliable, as it was based upon either records extracted directly from Chin's phone or testimony that was subject to cross-examination. All three forms of challenged evidence were also closely connected to the charged conduct — the evidence involved the same group of individuals (Chin, the victim, and her close friend), the same time frame, and the same general type of interaction. And the high probative value of the challenged evidence was not substantially outweighed by any risk of unfair prejudice — the specific evidence was no more sensational than the actual charged conduct of producing sexually explicit images of a minor.

The fact that the district court did not conduct an explicit Rule 403 balancing test does not cause the admission of the evidence to be an abuse of discretion. *See, e.g., United States v. Huazhi Han*, 105 F.4th 986, 994 (7th Cir. 2024) ("Although the district court did not explicitly engage in

[Rule 403] balancing, implicit in its description of the highly probative nature of this evidence was a finding that it did not unfairly prejudice the defendant."); *United States v. Piette*, 45 F.4th 1142, 1153-54 (10th Cir. 2022) (recognizing that the court had "consistently upheld implicit Rule 403 determinations when the determinations are supported by the record"). The district court explicitly set forth that the evidence was highly probative (and, indeed, intrinsic), and implicit in this finding was the conclusion that it was not substantially outweighed by any risk of *unfair* prejudice or concern that the evidence would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Bajoghli*, 785 F.3d at 966.

The district court was also well aware of the role of Rule 403 in the Rule 404(b) inquiry — the very next section of the district court's order addressed whether Chin's prior child pornography conviction was admissible under Rule 404(b), and the district court found that "admitting evidence of his prior conviction at trial would result in *unfair prejudice*." JA235 (emphasis added). That the district court underwent a detailed Rule 403 analysis of another challenged piece of evidence in the very same order and granted Chin's motion to exclude that evidence further demonstrates that the district

court implicitly found that the admitted evidence did not unfairly prejudice Chin. JA235-238.[10]

The district court did not abuse its discretion in admitting the evidence Chin sought to exclude under Rule 404(b).

### V. The district court did not abuse its discretion by permitting the United States to impeach Chin with a factual statement made in his motion to suppress.

*A. Standard of Review*

This Court reviews the admission of evidence for abuse of discretion. *Cowden*, 882 F.3d 464 at 471. Evidence that is improperly admitted is subject to harmless error review. *United States v. Wilson*, 624 F.3d 640, 654 (4th Cir. 2010). "[T]he test for harmlessness is 'whether we can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Id.*

---

[10] Following subsequent litigation and an interlocutory appeal by the United States, Chin's prior conviction was admitted at trial pursuant to Federal Rule of Evidence 414. JA342-345.

### *B. The district court did not abuse its discretion in permitting the United States to impeach Chin with his statement made through counsel.*

The district court did not abuse its discretion by allowing the United States to impeach Chin with a factual statement made on his behalf through counsel. Such statements through counsel are attributable to Chin and can be admitted by the government as a statement of a party opponent. A statement is not hearsay if "[t]he statement is offered against a party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). "Generally, statements by an attorney concerning a matter within his employment may be admissible against the retaining[11] client." *United States v. Blood*, 806 F.2d 1218, 1221 (4th Cir. 1986); *see also United States v. Gordon*, 754 F. App'x 171, 177 (4th Cir. 2018) ("factual admissions made [through defendant's counsel] are admissible non-hearsay because they were made by [defendant]'s attorney, acting as his agent, during and within the scope of the principal-agent relationship").

---

[11] There is no meaningful distinction between an appointed and a retained attorney in this context, as the attorney is acting as his client's agent regardless who is paying his fee.

In this case, Chin filed two documents in connection with a motion to suppress the border search of his phone — a Motion to Suppress Evidence (JA81-92) and a Memorandum in Support of Defendant's Motion to Suppress Evidence (JA93-106). The motion includes a recitation of the facts upon which Chin relied for his arguments; the memorandum refers to this recitation as the "known facts of the matters leading up to the March 21, 2022, seizure of the defendant's Samsung Galaxy 9 smartphone." JA82-87, JA93. Within this recitation of the "known facts," Chin's motion stated the following:

> Officer Terrazas decided to question the defendant about the photograph of a suspected female minor which was visible on the screen saver for the Samsung Galaxy 9 smartphone. . . . In responding to Officer Terrazas's question, the defendant said that the person was a friend whom he met online about a year and a half ago. The defendant was asked if she was a relative. The defendant said she was not. Officer Terrazas then asked the defendant how old the female was. The defendant responded that she was 13 years old.

JA84-85.

There is no question that when the motion to suppress that included these statements was filed, it was filed on behalf of Chin through his prior counsel, who was acting on Chin's behalf, and the statements were made within the scope of their principal-agent relationship. Accordingly, the

statements were admissible against Chin as non-hearsay under Rule 801(d)(2)(D). And in this case, the United States did not seek to admit the statement against him in its case-in-chief — the United States used the statement solely to briefly impeach Chin's inconsistent testimony.

Chin's attempt to recast the factual recitation in the suppression motion as merely an identification of a statement to be suppressed is inconsistent with the clear language of the filings. Those filings explicitly refer to the recitation as the "known facts" upon which Chin relied to make his motion. As such, the statements are factual admissions by Chin through his agent.

Chin's reliance on cases regarding "judicial admissions" is misplaced, as the issue at hand is not whether the statement was a binding "judicial admission" but whether it was a statement by Chin made through counsel that can be admitted as evidence. "A distinction is generally recognized between an attorney's *judicial admissions*, which, like any stipulation, can bind a party within a given lawsuit, and an attorney's less formal *evidentiary admissions*, which are statements made as a party's agent and which the trier of fact may evaluate as it sees fit." *United States v. McKeon*, 738 F.2d 26, 30 n.3 (2d Cir. 1984) (emphasis added).

The United States did not seek a ruling that the statement made in the suppression motion was a binding admission tantamount to a stipulation. Chin, just as he did, was free to testify in a manner inconsistent with what was in the factual statement of his motion to suppress. And Chin was given the opportunity to deny the accuracy of the statement in the suppression motion and blame it on the "wrongdoings" of an attorney that he "had to fire." JA829. The district court did not abuse its discretion, however, in permitting the United States to confront him with the prior agent statement because a party "cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." *Tun-Cos v. Perrotte*, 922 F.3d 514, 527-28 (4th Cir. 2019) (citing *McKeon*, 738 F.2d at 31). Chin put forth two contradictory factual contentions about what he told the officer at the border during the course of his case, and the United States was properly permitted to put those two statements before the jury to allow them to make their own determination as to credibility.

*C. Any alleged error by the district court was also harmless.*

Even if the district court abused its discretion allowing the use of the statement from the suppression motion for impeachment, such error was harmless given the overwhelming weight of the evidence against Chin and the overall lack of credibility of his testimony. The district court, having had the same opportunity as the jury to observe and assess Chin's testimony, found that it "included a number of what this Court will consider obvious falsehoods" that related directly to the offense conduct. JA985. The jury also had dozens of exhibits that corroborated the testimony of the victim and her friend as to Chin's conduct and contradicted Chin's version of events. Compared to the trial as a whole, a brief exchange impeaching Chin on an issue not directly tied to any element[12] had no impact whatsoever on the outcome of the trial.

[12] Neither 18 U.S.C. § 2251(a) nor 18 U.S.C. § 2422(b) require proof that a defendant knew that a person was a minor. *See United States v. Banker*, 876 F.3d 530, 536-40 (4th Cir. 2017) (finding that § 2422(b) does not require proof of defendant's knowledge regarding the victim's age); *United States v. Malloy*, 568 F.3d 166, 171-74 (4th Cir. 2009) (knowledge of age was not an element of § 2251(a)).

## VI. Chin's sentence was procedurally and substantively reasonable.

*A. Standard of Review*

Sentences under an advisory guideline system are reviewed for reasonableness. *United States v. Booker*, 543 U.S. 220, 260-63 (2005). In conducting this analysis, this Court reviews the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Thornton*, 554 F.3d 443, 445 (4th Cir. 2009).

Prior to reviewing a sentence for substantive reasonableness, this Court must first consider whether the sentence was procedurally reasonable. *United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019). For a sentence to be procedurally reasonable, the district court must properly calculate the applicable Guideline range, consider all nonfrivolous arguments by the defendant, and adequately explain the reasons for its sentence. *Id.*

Once a sentence is found to be free of procedural errors, the Court is to "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall v. United States,* 552 U.S. 38, 51 (2007). In so doing, the Court presumes that a sentence within or below the Guideline range is reasonable. *United States v. Gutierrez,* 963 F.3d 320, 344

(4th Cir. 2020). "[A] defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the § 3553(a) factors." *United States v. Montes-Pineda*, 445 F.3d 375, 379 (4th Cir. 2006). A sentence is substantively unreasonable in light of 18 U.S.C. § 3553(a) if "the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

*B. The district court correctly applied the enhancement under U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved sexual contact.*

The district court properly applied the two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A) for the offense involving sexual contact. Per the commentary to § 2G2.1, "sexual contact" follows the definition given in 18 U.S.C. § 2246(3). U.S.S.G. § 2G2.1, cmt. n.2. That statute defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks *of any person* with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire *of any person*." 18 U.S.C. § 2246(3) (emphasis added). Per uncontested facts in the PSR, the offense involved the production of images

depicting the minor victim masturbating, which meets the definition of the intentional touching of the genitals of any person. JA983, JA1035. The conversations between Chin and the victim make clear that the intent of that touching was to arouse or gratify Chin's sexual desire. This readily satisfies the requirement of sexual contact under § 2G2.1(b)(2)(A) and the district court properly overruled Chin's objection.[13]

*C. The district court properly applied a two-level enhancement for obstruction of justice based upon Chin's perjurious testimony.*

The Sentencing Guidelines call for a two-level enhancement under U.S.S.G. § 3C1.1 if, in relevant part, "(1) the defendant willfully . . . attempted to obstruct or impede the administration of justice with respect to the . . . prosecution . . . of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction." The obstruction enhancement unambiguously covers "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 cmt. n.4(B).

[13] Chin also argues, for the first time on appeal, that the enhancement also constitutes impermissible double-counting. However, the offense of conviction does not require any form of sexual contact — it requires only the depiction of "sexually explicit conduct," which can include the lascivious exhibition of the genitals. Accordingly, the commission of sexual contact is not incorporated into the base offense level.

"Where the enhancement for obstruction of justice is based on a defendant's perjurious testimony, trial court findings should encompass the factual predicates for perjury, namely that the defendant (1) gave false testimony; (2) concerning a material matter; (3) with willful intent to deceive." *United States v. Andrews*, 808 F.3d 964, 969 (4th Cir. 2015) (internal quotation marks omitted). However, the district court need not "address each element of the alleged perjury in a separate and clear finding," even if doing so is "preferable" for purposes of appellate review. *United States v. Perez*, 661 F.3d 189, 193 (4th Cir. 2011). "It is enough . . . if the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.* (internal quotation marks omitted); *see also United States v. Sun*, 278 F.3d 302, 314 (4th Cir. 2002) (affirming district court's application of obstruction enhancement even though it did not make specific finding of materiality because that element was "obvious" given nature of testimony).

That standard was satisfied in this case. The district court unequivocally found that Chin's testimony included "obvious falsehoods" and that "these lies permeated his testimony." JA985. Specifically, the district court found that Chin "provided an elaborate but false explanation of

his conduct, of his travels, of his intent" and that the purpose of his testimony was to "blame all of [his actions] on these girls and tried to portray himself as a victim and tried to rely upon that as the explanation of why he had all of these images and retained them." JA985. The district court based its imposition of the obstruction enhancement on "more than just [the jury's] rejection of [Chin's] testimony," finding that it was based upon the fact that Chin "obviously lied about his relationship with these girls and his conduct throughout" his testimony. JA985-986.

While the district court did not explicitly tick through each of the three predicates of perjury, it made factual findings that encompassed all of the necessary findings. The district court found that Chin's testimony included patently false statements that were directly targeted to critical details of the crimes on trial, including his interactions with the victims and his explanations as to how he came to possess images of child pornography depicting the minor victim. The district court made sufficiently clear findings to support the conclusion that Chin's testimony was both false and material. *See United States v. Quinn*, 359 F.3d 666, 681 (4th Cir. 2004) (concluding that defendants' false testimony was material when it "concerned the essential facts charged"). The district court also touched on the willfulness

and materiality factors by explicitly agreeing with the government's characterization of Chin's testimony; the government had described the testimony as "an affirmative, willful lie that he told to the jury, and it was material because it went directly to an element of the offense." JA984-985.

Chin's testimony was unquestionably a willful attempt to deceive. He chose to testify — even though he had no obligation to do so — *and* baldly lied throughout his time on the stand. His testimony claiming that he was the innocent victim of a predatory child who harassed him by sending unwanted and unsolicited sexually explicit images — that he then chose to screenshot and save — was so inconsistent with the rest of the evidence presented at trial that there was no innocent explanation for it.

The district court correctly applied the two-level enhancement for Chin's perjured testimony.

*D. The district court correctly applied the enhancement under U.S.S.G. § 4B1.5(b) because the offense involved Chin engaging in the production of child pornography on more than one occasion.*

The district court properly applied a five-level enhancement under U.S.S.G. § 4B1.5(b) because Chin was convicted of a covered sex crime and engaged in a "pattern of activity involving prohibited sexual conduct." The term "prohibited sexual conduct" is defined as "any offense described in

18 U.S.C. § 2426(b)(1)(A) or (B)" or "the production of child pornography." U.S.S.G. § 4B1.5 cmt. n.4(A). A pattern of activity requires that a defendant, on at least two "separate occasions," engaged in prohibited sexual conduct with a minor. U.S.S.G. § 4B1.5 cmt. n.4(B)(i). An occasion is considered for the enhancement regardless of whether it resulted in a conviction or occurred during the course of the offense of conviction. U.S.S.G. §4B1.5 cmt. n.4(B)(ii).

At trial, the United States introduced numerous images of child pornography depicting the minor victim that were produced at Chin's direction on different dates. JA398-406, JA619-635. The district court correctly recognized that Chin "engaged in numerous acts that resulted in numerous instances where one or the other of these victims provided him with pictures that amount to child pornography." J987. This use of the minor victim to produce child pornography on multiple dates provided at least two separate occasions of prohibited sexual conduct to apply the enhancement.

*E. Chin's downward variant sentence was substantively reasonable.*

Chin's 37-year prison sentence is presumed reasonable because it was a downward variance from his advisory Guideline range of life in prison. Chin does not identify a single improper aspect of the district court's

balancing of the factors under § 3553(a); instead, he makes only a single conclusory assertion that the sentence was "substantively unreasonable because it is greater than necessary to fulfill the purposes 18 U.S.C. § 3553(a)(2)." Appellant's Br. at 53. The district court's thorough explanation of its sentencing decision, which touched on the facts of the case, the impact of the offense on the victims, and Chin's own mental health and honorable military service, demonstrated that the relevant § 3553(a) factors were appropriately balanced. JA1002-1005. The district court's sentence should be affirmed.

## CONCLUSION

For the foregoing reasons, Chin's conviction and sentence should be affirmed.

Respectfully submitted,

MOORE CAPITO
United States Attorney

By: s/Jennifer Rada Herrald
JENNIFER RADA HERRAD
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 11,666 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because the brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 14-point Georgia.

s/Jennifer Rada Herrald
JENNIFER RADA HERRALD
Assistant United States Attorney
Attorney for the United States

Date: January 28, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2026, I electronically filed the foregoing "BRIEF OF APPELLEE THE UNITED STATES OF AMERICA" with the Clerk of court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

David O. Schles, Esq.
Law Office of David Schles
815 Quarrier Street, Suite 306
Charleston, West Virginia 25301
Telephone: 304-344-1559
E-mail: schleslaw@gmail.com

s/Jennifer Rada Herrald
JENNIFER RADA HERRALD
Assistant United States Attorney
Attorney for the United States